Richard L. VICKS, Appellant,

v.

UNITED STATES, Appellee.

No. 6905.

District of Columbia Court of Appeals.

Argued July 10, 1973.

Decided Oct. 2, 1973.

As Amended Oct. 11, 1973.

§ 3006A(e). *E. g.*, United States v. Chavis, *supra* at 1142; cf. United States v. Theriault, *supra* at 715.

**248**

Milton M. Field, Washington, D. C., appointed by this court, for appellant.

William A. White, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Douglass J. McCollum, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

Arrested and charged with possession of desoxyn in violation of D.C.Code 1967, § 33–702(a)(4), appellant was—after trial by jury—found guilty as charged. On this appeal appellant urges principally that the trial court erred in failing to grant his motion to suppress the desoxyn. While the question is close from our view of the record, we cannot determine with certainty that the motion was properly denied without remanding the record for supplemental findings. It may be helpful on remand if we set out the issue from our view of the record.

At the hearing on the motion to suppress there was testimony by Officer Kennedy of the Third District Vice Unit in substance as follows. In the early afternoon of August 14, 1972, Officer Kennedy and another officer were proceeding in an unmarked police car in an easterly direction in the 1200 block of T Street, N. W. The officers observed appellant [1] and several other men, one of whom handed appellant some money. The police vehicle was immediately stopped and the officers got out, whereupon appellant—observing the officers—began to walk away. Officer Kennedy then stopped appellant, identified himself as a police officer and asked appellant if he had any money. At this point a lady came up to appellant and he attempted to hand her "a package of cigarettes in a white handkerchief." According to the officer's testimony the following then transpired:

We asked Mr. Vicks what was in it, and he stated, he didn't know, he had just found it. We asked him again, and he was still trying to give it to the female. Again, he said he didn't know, when we asked him. At this time the female had it. At this time we asked the female to hand us the item, and she asked him

---

1. Appellant was known to Officer Kennedy.

should she do this, and he said, yes, and she handed it to us.

After the officer's testimony the following colloquy ensued:

THE COURT: If it was not a search how are *you going to suppress that?* All they did was take something right out there in plain view.

MR. HOWELL: It was in a handkerchief, Your Honor.

THE COURT: Didn't they ask the girl, and she gave it to them?

MR. HOWELL: They asked the girl, but if you mean it was consent, it was not. Clearly, they were police officers.

THE COURT: You tell me what I mean—

MR. HOWELL: All I am saying is that it seems clear to me that these persons weren't voluntarily giving a handkerchief to someone. They had been told by police officers to give them the handkerchief. It seems to me they must establish this fact, relying on the voluntary surrender. They must prove it was voluntary. I would hope, under the circumstances, it wasn't voluntary.

THE COURT: I don't have any problem with the case at all.

It is right on its face, and I am going to deny your motion because there was no search here. They got—actually, they got it—certainly at the time—under the circumstances in which she handed it over—or, rather, *he* handed it over— that suggested right then to make a seizure of it—very suspicious circumstances —very. And they really never searched his person, but they took it from his vicinity. It doesn't present any problem at all. Denied. I deny your motion. [Emphasis in original.]

MR. HOWELL: Is Your Honor finding, as a matter of fact, that it was or was not in his possession?

THE COURT: Well—it was in the vicinity. It was in the vicinity—but there was never a search of his person in this case. *There was never a search* in this case. *All we had was a seizure. And, under the circumstances* of the type of [1] *area in which it occurred*—and the [2] *passing of money,* which is somewhat indicative of a transaction—and the [3] *walking away from the police officers*— and when they stopped them—and [4] *his actions with that girl*—it gave them all the right in the world to be suspicious of what was going on, and to examine what was in the girl's hands.

I so rule. Denied. [Emphasis added.]

As authority for its ruling the trial court relied upon this court's decision in Peterkin v. United States, D.C.App., 281 A.2d 567 (1971). Peterkin, like the appellant in the case at bar, was arrested in a high narcotics area and charged with possession of desoxyn. The distinguishing facts are, however, that Peterkin was observed to give something out of a vial in exchange for cash, and when he saw the officers he "stepped back." Later as Peterkin was attempting to comply with the officer's request for identification, the vial came into plain view. The officers then seized the vial and placed Peterkin under arrest. We recognized that the case presented a borderline situation but held that the two-way exchange tipped the scale from innocent activity to illicit bargaining. Here, of course, there was no "two-way exchange" and no "plain view" of the desoxyn. Thus, there existed no probable cause to arrest appellant and seize the handkerchief.

In our view, the sole ground upon which the denial of the motion to suppress could be upheld is that the evi-

dence was voluntarily handed to the officer. The trial court, while observing (1) that the evidence was "handed" to the officer, and (2) that the defendant had succeeded in divesting himself of possession of it by giving it to the woman, did not rule on the issue of consent and we remand for that purpose,[2] and a further hearing if deemed necessary. If, on remand, the court finds consent, the factors considered dispositive of that issue should be made to appear on the record. We retain jurisdiction of the appeal and remand the record.

So Ordered.

NEBEKER, Associate Judge (concurring) :

While I believe the able trial court judge properly held there was a reasonable basis for seizing the handkerchief and its contents for examination, I concur that we should not finally dispose of this case without a determination whether, under the circumstances, and in any event, the evidence was voluntarily surrendered. Patently guilty people are often insulated from prosecution by suppression of evidence through a process of microscopic analysis and comparison of facts in one case as compared with those of decided cases. Such a technical and finite approach to criminal law enforcement, aside from producing so many opinions that support can be found for any ruling, tends to stray from the basic thesis of the Fourth Amendment decisions—reasonableness. If admissibility of evidence can be sustained on any *reasonably* available basis, courts in my view, should do so.

2. We note that before a court can find a waiver of Fourth Amendment rights in the context of this "informal, unstructured" setting, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2057, 36 L.Ed.2d 854 (1973), the goverment must "demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. . . ." [*Id.* at 248, 93 S.Ct. at 2059; footnote omitted.]