UNITED STATES of America

v.

Clyde W. MYERS, Appellant.

No. 75–2014.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 1, 1976.

Decided June 18, 1976.

Rehearing Denied Aug. 19, 1976.

John Perazich, Washington, D. C. (appointed by this court), for appellant.

William J. O'Malley, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Carolyn R. Kleiman, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before TAMM and LEVENTHAL, Circuit Judges and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

Opinion for the Court filed by Circuit Judge TAMM.

Dissenting opinion filed by Circuit Judge LEVENTHAL.

TAMM, Circuit Judge:

In this action, defendant-appellant Clyde W. Myers challenges the trial court's denial of his motion to suppress evidence derived from an informer's tip to the police. The issue presented on appeal is whether the police had probable cause, based on the unidentified informer's tip, and their own independent investigation, to arrest the defendant without procuring a warrant. If the warrantless arrest was valid, the search was also valid as a search incident to a lawful arrest. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. THE FACTUAL BACKGROUND

At approximately 9:30 on the morning of June 9, 1975, Detective Charles J. Marcum, an officer with five years experience in the Narcotics Branch of the Metropolitan Police Department, received a telephone call from a confidential source with whom he had had numerous contacts over the previous two years. In the past the informant's information always had been independently corroborated either by surveillance or arrest. The informant's reliability is thus conceded by both parties.

The information relayed by the June 9 telephone call was that Clyde Myers was presently at his girlfriend's residence, 455 Massachusetts Avenue, N.W., and would be leaving within one hour with six "spoons" of heroin.[1] He would drive to 14th and Fairmount Streets, N.W., where the heroin was to be cut and packaged for distribution on the street. The informant gave the officer a description of Myers and his car, including the model, year, color, license plate number, and where it was parked.

Detective Marcum and another officer immediately proceeded to this area. They found Myers' car parked where the informant had said it would be. Shortly before 10:30 Marcum saw Myers leave 455 Massachusetts Avenue, N.W., and walk to his car. Marcum recognized Myers, as he had been investigating him for several months. In addition, the informant's description of Myers matched the defendant. Myers was arrested as he attempted to unlock his car door. A subsequent search revealed that he was carrying six spoons of heroin and $900 in currency. It is this evidence which the trial court refused to suppress. Defendant was found guilty of violating 21 U.S.C. § 841(a) (possession with intent to distribute a controlled substance) and 33 D.C.Code § 402(a) (possession of a narcotic drug). He was sentenced to serve three to ten years with a special parole term of six years since this was his third violation of 21 U.S.C. § 841(a). This appeal followed.

## II. THE *Aguilar/Spinelli/Harris* STANDARDS

In order to determine whether there was probable cause for this warrantless arrest we must first determine whether Detective Marcum's personal knowledge, added to the informer's tip, was sufficient to warrant a prudent person in believing that the defendant was committing an offense against the United States. *United States v. Davis,* 461 F.2d 1026, 1032 (3d Cir. 1972). *See also Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The Supreme Court has long sought to clarify the standards by which lower courts are to weigh the credibility of informants' tips in determining whether there was probable cause either to arrest or to issue a warrant, the same probable cause standards being applicable to each. *See Whiteley v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). This subject has evoked considerable thought but not much clarity or unanimity in the high Court's opinions. *See, e. g., Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (three Justices dissented from opinion establishing that the court must find that the informer was reliable and that the underlying circumstances for the informant's conclusion were stated); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (four Justices agreed that if the tip were found insufficient under *Aguilar,* other corroborating information could buttress the tip; three Justices dissented); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (four Justices dissented and four others concurred with reservations in the Chief Justice's opinion which stated, contrary to *Spinelli,* that a policeman's knowledge of a suspect's reputation can serve as support for an informant's tip). This trilogy of cases has thus established that either the informer must be reliable and his conclusions supported by underlying circumstanc-

---

1. "Spoons" refers to the street measurement for heroin in the package. Supplemental Record at 20.

es, or there must be sufficient independent corroboration (which may include knowledge of the defendant's criminal reputation) to meet the Fourth Amendment's probable cause requirement.

■ Beginning with the *Aguilar* requirements then, the informer's reliability here is concededly established as mentioned above. We next must determine if the tip conveyed sufficient information concerning the underlying circumstances to support the conclusion that criminal activity was taking place. The *Aguilar* prong is satisfied if the tip contains sufficient factual detail to give rise to the inference that the informant came about the information in a reliable manner. *Draper v. United States* is a suitable benchmark to follow here.[2] *Spinelli, supra,* 393 U.S. at 416–17, 89 S.Ct. 584. Although the informer in this instance supplied some factual detail, we do not find the information was sufficiently detailed to come within the shelter of the *Draper* rationale. Contrary to *Draper,* where the information gave rise to a strong inference of personal knowledge of the facts by the informer because of the minute particularity of the information given, here the informer relayed only common knowledge. For example, anyone in the neighborhood could probably have mentioned to the informer in a passing conversation that Myers was visiting his girlfriend and his car was parked behind her house. The only detail from which one might infer that the informer based his conclusions on personal knowledge here was the fact that Myers would be leaving within one hour. Standing alone, this detail did not indicate that the informer had gathered his information in a reliable manner.

Because the tip fails to satisfy the *Aguilar* requirements, we must next determine whether Detective Marcum's independent knowledge, when combined with the information relayed in the tip, established an independently valid basis for a finding of probable cause under *Spinelli* and *Harris, supra.* The lesson which we draw from these authorities is that

> [w]hen a tip not meeting the *Aguilar* test has generated police investigation and this has developed significant corroboration or other "probative indications of criminal activity along the lines suggested by the informant," . . . the tip, even though not qualifying under *Aguilar* may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause.

*United States v. Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972) (emphasis and citations omitted).

Detective Marcum was able to corroborate each of the facts contained in the tip, except the one relating to Myers' destination. In addition, Marcum had been receiving reports on the defendant's activities from other sources. Supplemental Record at 21. Myers had been convicted for prior narcotics violations while Marcum was working in the narcotics branch of the police department, and Marcum had "come in contact with Mr. Myers on several different occasions." *Id.* at 17. The defendant's reputation therefore is obvious.

This independent police corroboration of the informer's tip from surveillance and investigation of the suspect, other confidential sources, and from personal knowledge of the defendant's reputation, sustains a finding of probable cause for an arrest under the *Spinelli-Harris* standards, whereas the tip alone would fail to satisfy the *Aguilar* requirements. *See Whiteley v. Warden, supra,* 401 U.S. at 567, 91 S.Ct. 1031. Under the *Spinelli* rationale,

> less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or cor-

---

**2.** 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper* the informant reported that Draper would be returning to Denver from Chicago on a certain train on one of two mornings with a certain quantity of heroin. He described with great particularity the kind of clothes Draper would be wearing, the kind of bag he would be carrying, and the rate of speed at which he would be walking.

roboration of the informant's report to make it "apparent that the informant had not been fabricating his report out of whole cloth."

United States v. Squella-Avendano, 447 F.2d 575, 580 (5th Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971).

As we find there was probable cause for the defendant's arrest and the search was incident thereto, the motion to suppress the evidence seized was properly denied by the district court.

Affirmed.

LEVENTHAL, Circuit Judge (dissenting):

I respectfully dissent. Under the Fourth Amendment, police cannot enter a private home or effect an arrest, and cannot lawfully be given a warrant to do so, merely upon the tip of an informer. This proposition stands even where the suspect has a bad reputation, as a known offender in the past. The Constitution requires, under the two-pronged analysis of Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1965),[1] that the police, first, have reason to believe the informant is reliable, a test satisfied here, and, second, have some information about an offense beyond a bald conclusory statement by the informant. In the words of Aguilar the police must have information of at least "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were. . . . " That test is not satisfied by police knowledge of a suspect's reputation, for at most

that establishes the suspect's conduct in the past and not probable cause to take action on the basis of current criminality—i. e., recent, present or imminent activity that supports a current arrest or entry. Of course if the tip describes the suspect's criminal activity in such factual detail as to lead to the conclusion that the informant "is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation," that may be sufficient to come under the rationale of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as set forth in Spinelli v. United States, 393 U.S. 410, 416–17, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[2] However, the majority concedes that such specificity of detail is not present in this case.[3]

When a reliable informant presents factual information of current criminality, such as his own observations of contraband drugs in the house, the police have something to go on beyond his bald conclusion; they have the testimony of a reliable witness who reports specific observations. Suppose the police do not have that, either because they do not ask or the informant will not reveal the basis for his information? Then the police must themselves make observations of facts that are suspicious, which can be added onto the bare conclusion of the reliable informant to constitute probable cause; but that kind of corroboration requires observations of suspicious activity—something more than wholly innocent activity. To repeat, the probable cause showing of the Fourth

---

1. I do not read United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) to dispense with either of the two prongs of Aguilar. All that was at issue there was the past-reliability-of-the-informer test, which could not be squarely met because the police were acting on the tip of a first-time informer. But five Justices agreed there was a sufficient basis to credit the informant's report because it was based on an assertion of personal observation and a declaration against interest. The fact that the affiant knew the suspect to have previously trafficked in contraband was not relied on by a majority of Justices, see footnote 13 and accompanying text infra.

2. Spinelli actually went a step beyond Draper in dispensing with the need for police corroboration of a tip of requisite factual specificity. See The Supreme Court, 1968 Term, 83 Harv.L. Rev. 7, 180 (1969).

3. Much was made at oral argument of the fact that the informant supposedly said "six spoons" of heroin would be found on Myers, and "six spoons" were indeed found. Marcum testified that the informant said "a large quantity of street, raw heroin" (Tr. 4), and that the specification came after the arrest from the lips of Myers (id. at 24).

Amendment requires something more than the bald conclusion of an informant. It requires either specific factual observations made by the informant and related to the police or direct police observation of suspicious activity that adds corroboration to the informant's conclusion.

## I.

There is undeniably an unusually impressive record before us of past reliability of the informer.[4] One is sorely tempted to concur in the result. But on further analysis I have concluded that the course taken today really jettisons one of the two *Aguilar* prongs—the one that requires disclosure by the reliable informant of some of the circumstances underlying his conclusion. The majority concedes that the tip in this case does not satisfy this requirement of *Aguilar* and lacks the specificity of detail to come within *Draper*. And yet it votes to affirm the warrantless arrest and search thereto of appellant Myers because he was known to the police as having been convicted for a prior narcotics offense and had been the subject of unspecified reports from other informants, and the police were able to independently corroborate certain innocent-seeming details of the tip in question, several of which were already known to the police.[5]

The factor of "reputation," relied on by the majority, merits further discussion. A state that operates without respect for privacy might rationally declare that all narcotics addicts may be searched at any time—for the chances are extremely high that at any given time they will be in possession of contraband. But that is not the way the United States does business. Under our Fourth Amendment, addicts are free from search unless there is something that reasonably focuses on them at the time of the search, as then possessing seizable items.[6] What we value is not the privacy of addicts *per se,* but the privacy of all; the concern is that this not begin to unravel by tolerating easy exceptions. The rule followed by the majority opens the way to a kind of "open season" on known addicts. An informer who has proven reliable in the past can operate for the future by learning the addict's path—himself or through available channels—and telling the police where the addict may be found and, perhaps, a few additional details like his car make and license plate number and daily schedule. The informant, who generally receives a *quid pro quo* for tips, can be quite confident his reliability will be maintained—if not in every single instance, still with a high score.

What troubles me particularly is that we have had no indication that the police would really be hobbled by maintaining the *Aguilar* requirement that the informant indicate at least some of the circumstances that generate suspicion of a present offense. If the informant made the pertinent observations he can readily say so. If not, all the more reason to be concerned. In that event, the cases require that the police themselves make corroborating observations. The informant can save them valuable time, advising them when and where to look, but they themselves must make the observations that corroborate the existence of suspicious circumstances.

What is entirely missing in the case before us is police knowledge of suspicious

4. Detective Marcum had worked with the informant at least ten times over a period of two years, during which the informant had provided information which directly resulted in arrests and convictions in a homicide case, a robbery case, and a narcotics case; had provided additional information concerning narcotics activities which was corroborated by police surveillance; and had participated in a number of controlled "buys" of narcotics which resulted in three arrests. Indeed, Detective Marcum testified that the informant had never proven unreliable (Tr. 8–13, 16).

5. Detective Marcum knew from other sources that Myers frequented his girl friend's house at 455 Massachusetts Avenue, N.W. and that he drove a green Pontiac Tempest (Tr. 18). *See* Brief for Appellee at 3.

6. *See, e. g., Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *See generally* Herman, *Warrants for Arrest or Search: Impeaching the Allegations of a Facially Sufficient Affidavit,* 36 Ohio St.L.J. 721, 731 (1975).

circumstances—either those that came to the attention of a reliable witness, the informant or his sources, or any observed by the police themselves.

Even for a police officer whose reliability is generally presumed, "[m]ere affirmance of belief or suspicion is not enough." *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). And "if the affidavit of an officer, known by the magistrate to be honest and experienced, stating that gambling equipment is located in a certain building is unacceptable, it would be quixotic if a similar statement from an honest informant were found to furnish probable cause."[7]

If the informant is unwilling to reveal his sources, or if law enforcement objectives prevent their disclosure to a magistrate or a court on a motion to suppress, and the tip lacks the self-verifying detail present in *Draper,* the magistrate called upon to provide a judicial imprimatur simply has no basis, without more, to authorize intrusion into a home or implementation of a street arrest. Nor is any greater authority for intrusion available to a policeman, for although he may proceed without a warrant when there is an emergency he must have at least as much probable cause as a magistrate would require. The course open to the police in such circumstances is that outlined in *Spinelli,* to verify by independent investigation either the substance of the tip or other criminal or suspicious activity which elevates the composite showing to a level of probable cause.

## II.

I have no difficulty with the majority's use of the standard underlying Judge Friendly's opinion in *United States v. Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972). "When a tip not meeting the *Aguilar* test has generated police investigation and this has developed significant corroboration or other '*probative indications of criminal activity* along the lines suggested by the informant,' the tip, even though not qualifying under *Aguilar,* may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required by probable cause."[8]

However, I am unable to understand how the independent police observation in this case is "significant corroboration" under *Canieso.* Nor do I perceive how it differs significantly from the showing found lacking in *Spinelli,* where the affidavit before the magistrate recited (1) that affiant, an FBI agent, had seen the defendant crossing the border from Illinois into Missouri and entering into an apartment building and had followed him, on one occasion, to a specific apartment in the building; (2) that the defendant was known to the authorities as a gambler; (3) that the FBI had been told by a "reliable informant" that the defendant was engaged in a wagering enterprise operated by means of telephones with two specific numbers; and (4) that an independent FBI check had revealed that the two phones were located in the apartment into which the defendant earlier had been seen entering. The Court found the police corroboration of the existence of the two phones and their location in the apartment inadequate, because Spinelli's use of two different phones at a place other than his home or business could have been for an innocent purpose.[9]

---

7. White, J., concurring in *Spinelli v. United States, supra,* 393 U.S. at 424, 89 S.Ct. at 593.

8. Citation omitted & emphasis in original.

9. In a subsequent decision, *Whiteley v. Warden,* 401 U.S. 560, 566–67, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306 (1971), Justice Harlan made clear that the information gathered by arresting officers that can be used to bolster a tip inadequate under *Aguilar* or *Draper* "must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in *Draper* itself, were in the process of committing the felony." In *Whiteley* an arrest warrant was issued solely on the oath of a local sheriff that the defendants "did . . . unlawfully break and enter" a building. The arrest was made by officers who relied solely on a police broadcast stating the warrant had issued and describing the defendants and their car. The Court held that the arresting officers' observation that the defendants matched the broadcast description would not validate the otherwise

Similarly, what we have in the case at bar is corroboration of innocuous details of the tip, not corroboration of suspicious activity. There was, primarily, verification of Myers' departure from the house within the hour and attempt to get into his car. This inconsequential corroboration does not render the informant's report of criminal activity "of the sort which in common experience may be recognized as having been obtained in a reliable way. . . . " 393 U.S. at 417–18, 89 S.Ct. at 590. It is simply not apparent from the tip even as partially corroborated that the informant had not fabricated his report of illegality from whole cloth, or had not obtained his information from unreliable sources.

In the absence of information that suspicious observations were made personally by reliable sources, the police acted precipitously in arresting Myers when they did. Had they followed Myers to his destination, there might have been corroboration of the informant's assertion that this would be the intersection of 14th & Fairmount Streets, a known market area for contraband, or indications of suspicious activity to add requisite probative force to the substance of the tip. A sharp contrast is provided by the patient police surveillance in *Canieso,* which yielded "significant corroboration" of suspicious activity along the lines suggested by the informant.[10]

What is wholly lacking here is independent police observation of any "suggestion of criminal conduct" or activity "endowed with an aura of suspicion by virtue of the informant's tip," 393 U.S. at 418, 89 S.Ct. at

590, such as was present in *Canieso* and the other case relied upon by the majority, *United States v. Squella-Avendano,* 447 F.2d 575 (5th Cir.), *cert. denied,* 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971).[11] All we have to supplement the tip as partially corroborated is Detective Marcum's knowledge of Myers' reputation, gleaned from appellant's prior conviction for a narcotics offense and unspecified reports from other informants.

The reputation factor stressed in Judge Tamm's opinion has only slight weight. This cannot fairly be equated with the "further support" required by *Spinelli* to transform a tip inadequate under *Aguilar,* even as partially corroborated, "into a judgment that a crime was probably being committed." 393 U.S. at 418, 89 S.Ct. at 590. Police knowledge of a suspect's reputation adds little to a conclusion of probable cause for a current offense, and is not a substantial factor in the scales when the showing is inadequate on the basic two components of *Aguilar.* Moreover, I fear that reliance on reputational evidence may completely erode the thrust of *Aguilar.*[12] At least four Justices in *Spinelli* eschewed reliance on the statement that Spinelli was known to the police and others as a gambler. And Justice White's concurring opinion voices no disagreement with this aspect of the *Spinelli* holding. This is confirmed by his separate opinion in *Harris* voting to affirm the search on the ground the informant's personal observation constituted a declaration against interest and "that the affidavit considered as a whole, was sufficient to support issuance of the warrant." 403 U.S. at

inadequate warrant, because "the very most the additional information tended to establish is that either [the affiant], or his informant, or both of them, knew [the defendants] and the kind of car they drove; the record is devoid of any information at any stage of the proceeding from the time of the burglary to the event of the arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime."

10. *See* 470 F.2d at 1230.

11. *See* 447 F.2d at 582.

12. Reliance on police allegations of the suspect's reputation is an adequate substitute for a finding that the informer can be believed. And the fact that the suspect may have had previous encounters with the police may be the very reason that an unscrupulous informant thought he could incriminate the individual with impunity.

Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 707 n. 29 (1972); *see The Supreme Court, 1970 Term,* 85 Harv.L. Rev. 3, 58–59 (1971).

585, 91 S.Ct. at 2083. And while this is not critical, I perceive that only three, not four, Justices relied in *Harris* on reputation as a factor of any significance.[13]

I must state my agreement with the judgment of the Second Circuit in a recent case, that "the *Harris* opinion does not suggest that when an affidavit clearly fails to pass the first prong of the *[Aguilar]* test, the addition of a recital of past criminal activity may serve as an acceptable substitute for probable cause standards that have not been met. If such a recital were sufficient to remedy the deficiency, any tip, no matter how unreliably obtained, would suffice to allow a search, provided it could be shown that the owner of the premises had a record of prior similar criminal offenses." *United States v. Karathanos,* 531 F.2d 26, 32 (1976) (citation omitted).

Only if the Supreme Court advances beyond the plurality opinion in *Harris* to a rejection or modification of *Spinelli* would it be appropriate to place any outcome-determinative weight on the fact that a suspect is known to the police as someone formerly convicted of a narcotics offense. Until then, I am unwilling to join in a rule that announces "open season" on persons convicted of a prior offense, because of a purely conclusory tip even from a reliable informant.

---

**13.** Justice Stewart is identified as joining only in the first sentence of paragraph 1 of the headnote. The Reporter's headnote is reviewed by the Justices. Justice Stewart joined in part I, an overview of the case, but he did not join in part II of Chief Justice Burger's opinion in *Harris* where reputation is separately discussed.