**UNITED STATES of America**

v.

**April Renee JENKINS.**

**Crim. No. 80–528.**

United States District Court, District of Columbia.

Feb. 12, 1981.

James R. Spencer, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Edward Wilhite, Washington, D. C., for defendant.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The defendant is charged with unlawful possession with intent to distribute a controlled substance (heroin), U.S.C. § 841(a), and unlawful possession of a narcotic drug, 33 D.C.Code, § 402. The case is now before the Court on her motion to suppress the evidence on the grounds that the search was incident to an arrest made without probable cause. An evidentiary hearing was held on January 8, 1981, after which the Court allowed counsel to file additional memoranda. After giving careful consideration to the facts in the case and the arguments of counsel, the Court concludes that the arrest and search incident thereto were without probable cause and therefore the evidence must be suppressed.

I

The facts are as follows: On October 28, 1980, the officers were in an undisclosed location * in or around the 2000 block of 14th Street, N.W., when they observed an unidentified white male approach an unidentified black male. The officers testified that their attention was called to the two men because they observed very few white males in that neighborhood. The white male appeared to speak with the black male who then turned and walked over to the defendant. The defendant appeared to hand something to the black male who again turned and walked back to the white male. The black male appeared to hand something to the white male and the latter gave an undisclosed amount of money to the black male. The officers could not see what it was that apparently was handed from defendant to the black male and then to the white male. The officers had never observed this defendant before, nor had they ever observed the unidentified black male or the unidentified white male. None of the parties appeared to act in a furtive or nervous manner, and none of the parties appeared to be under the influence of drugs. The officers were trained narcotics

---

* The observation was from a building in the vicinity of the 2000 block of 14th Street, N.W. While the location was not identified to the Court or the defendant, the Court directed the government, on defendant's motion, to identify the location for defendant's *counsel* subject to the condition that counsel was not to disclose the location to his client or anyone else absent an order of the court. At the hearing, defendant's counsel had asked that the exact observation point be identified in order that he might view the area and make an independent determination whether the officers' view of the area where the incident took place was obstructed. Counsel was given leave to move to reopen the hearing if he determined that the officers' view was obstructed or that their testimony on this issue was contradicted by other evidence. Defendant has not requested a hearing on this issue nor has she presented argument on the issue in her later memorandum of law filed in this case; accordingly, the Court is satisfied based upon the evidence that the officers' view of the defendant was not obstructed.

officers and the observation took place in a high narcotics area. The officers, after observing the incident, gave a signal and the defendant was apprehended by other officers. At the time of the apprehension the defendant did not attempt to flee and did not do anything else which appeared to be suspicious.

## II

■ No one can seriously challenge the government argument that based upon the observation of the two officers, they had a right to be suspicious that the incident they observed was one involving narcotics, especially taking into consideration that it took place in a high narcotics area and that the officers were trained observers. Mere suspicion however is not sufficient; the standard the government must satisfy is that of probable cause. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed" (citations and footnote omitted). *Id.* at 175, 69 S.Ct. at 1310. The actions of the officers must be judged based upon whether they acted in a reasonable and prudent manner in view of the events unfolding before them.

■ The issue presented raises a close question, but one which must ultimately be resolved in favor of the defendant. Simply stated, although it is clear that the officers had reason to be suspicious, was there enough to cause that suspicion to ripen into probable cause?

Both sides have cited a number of cases in support of their respective position, and while those cases are close on the facts, each can be distinguished from that before the Court. In *United States v. (Patrick) Davis,* 147 U.S.App.D.C. 400, 458 F.2d 819 (1972), the officers observed a group of five or six "shabilly [sic] dressed men" who appeared to be nervous and "twitchy" and

who exhibited traits similar to narcotic drug addiction. *Id.* at 401, 458 F.2d at 820. Patrick Davis was seen to leave the group and walk over to a very well dressed man standing in a vacant lot. He exchanged paper currency for a "small brown package". *Id.* The officers did not immediately seek to apprehend him but when they did approach him, he appeared as though he was about to run and was stopped. *Id.* The court in upholding the arrest and search took into consideration the exchange of money for a small brown package, the fact that Davis and the others appeared nervous, that they appeared to be users of narcotics, and that Davis appeared ready to run when the officers approached. In *United States v. Brown,* 150 U.S.App.D.C. 113, 463 F.2d 949 (1972), the court upheld the arrest noting that the officers observed what appeared to be a narcotic transaction, that Brown's eyes were glassy and that based upon their experience, Brown was "high" on narcotics, that protruding from Brown's pocket was an envelope similar to the type used for narcotics, that the incident occurred in a high narcotics area, and that Brown and another man alternately occupied a telephone booth without ever using the phone. The officers in *United States v. Thomas,* 179 U.S.App.D.C. 161, 551 F.2d 347 (1976), who were using binoculars in a high crime area, observed Thomas pass a "silver object" to an unidentified man in exchange for currency. The court concluded that the officers had observed a "tinfoil packet" and the officers testified that such tinfoil packets were usually used in drug transactions. *Id.* at 162 n. 1, 551 F.2d at 348 n. 1. In the final case cited by the defendant, *United States v. (Larry) Davis,* 183 U.S.App.D.C. 121, 561 F.2d 1014, *cert. denied,* 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977), the officers who were staked out and using binoculars observed *three* different strangers approach Davis, hold a brief conversation, and then on each occasion, the stranger would hand Davis money after which Davis would reach into a manila envelope and take out a small object which he handed to the stranger who then

walked away. When the last stranger walked away the officers were able to observe in his hand several pills which appeared to be phenmetrazine. The officers had previously made nine arrests involving the same drug.

The defendant cited the above cases in support of her motion and the government has countered with two cases decided by the District of Columbia Court of Appeals. This Court has read those opinions and finds them anything but helpful to the government's argument. In *Tobias v. United States* 375 A.2d 491 (D.C.App.1977), two trained officers observed Tobias approach a stranger and remove from a shoulder bag a small object which he handed to the stranger in exchange for money. Tobias then walked away and approached a small group of men and took another small object from his shoulder bag. At that point one of the men, in a voice loud enough to be heard by the officer, warned Tobias that the police were behind him. He looked back at the officers, placed the object back into his shoulder bag and walked and then ran from the officers. The court in upholding the arrest and search noted that the officer had observed him exchange small items for currency, and that they saw him place one of those items back in his shoulder bag after he was warned that the police were nearby. Finally, the court took into consideration the fact that Tobias fled when the officers attempted to question him. In *Vicks v. United States*, 310 A.2d 247 (D.C.App.1973), the court remanded the case to the trial court to consider whether the evidence in question was voluntarily handed to the officers. While doing so, the court clearly indicated that absent voluntary action by the defendant, the evidence would have to be suppressed. In that case the officers observed Vicks and several other men, one of whom handed Vicks money. The officers approached the group whereupon Vicks began to walk away. When they stopped Vicks he handed a package of cigarettes in a white handkerchief to a friend. When asked what was in the package of cigarettes he stated he did not know. His friend was asked to hand the cigarette

package over to the officers and she asked Vicks whether she should do so and he replied in the affirmative. The court noted that there was no "two-way exchange", that the drugs were not in "plain view" of the officers, and that therefore there existed no probable cause to arrest Vicks and search the handkerchief. *Id.* at 249.

## III

In the view of this Court the facts in this case are distinguishable since in the above five cases, excepting *Vicks*, the officers either had a chance to observe *several* transactions of a suspicious nature in which they observed a *two-way exchange*, money for packages, or observed an exchange of money for a *package which they could identify* as being the type used in narcotics transactions, or observed the defendants as *apparent users* of narcotics from their actions or observed the defendants *attempt to flee* or *exhibit nervous or furtive movements.* Had any of those additional factors been involved in this case then the officers may well have had probable cause to make the arrest. Here the defendant and the two other persons involved in the incident did not exhibit furtive or nervous actions, did not appear to be "high" on drugs, and the officers were unable to observe what if anything had been transferred from the defendant in exchange for currency. Furthermore, the officers observed only one such incident before arresting the defendant and there is no evidence that they did so because they were afraid she was about to flee. When they approached her she did not attempt to flee to avoid arrest. Under the facts and circumstances of this case the Court concludes that the officers did not have probable cause to make the arrest and search incident thereto.

In view of the above, it is hereby

ORDERED that defendant's motion to suppress is granted, and it is further

ORDERED that the case is scheduled for a status hearing.