**Theresa L. ALLEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–210.**

District of Columbia Court of Appeals.

Submitted May 7, 1985.

Decided Aug. 19, 1985.

Thomas R. Kennedy, Washington, D.C., appointed by this court, was on brief for appellant.

Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Amy S. Berman, and Ellen Bass, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before NEBEKER, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

Acting on a telephone tip, officers of the Metropolitan Police arrested and searched appellant, finding certain drugs. Appellant's motion to suppress the drugs was denied. On this appeal she challenges that ruling, arguing that the tip did not provide the police with probable cause. We disagree and affirm.

I

Officer Frank Simms, a member of the Third District drug enforcement unit, received a telephone call one afternoon informing him that drug transactions were occurring at the corner of Fifth and O Streets, Northwest. The caller's voice was familiar to Simms because he had spoken with her several times before. He also knew that the caller, who was not a paid police informant, lived in the vicinity of Fifth and S Streets and that she was active in her community's campaign against drugs. Although Simms was not aware of any arrests or convictions resulting from any of this citizen's past tips, he testified that "[n]ormally every occasion that she gives us information, narcotics [are] more than likely recovered from that area." He himself had participated several times in the seizure of such drugs.

On this occasion the caller told Officer Simms that a man wearing a pink shirt, blue jeans, and Nike tennis shoes was selling "bam" (a slang term for phenmetrazine) at the corner of Fifth and O Streets. The caller had seen this man receive drugs from the passenger side of an orange Pontiac that was parked on the street, then distribute them to other persons on the sidewalk. Simms did not recall, however, whether the caller said she had seen anything being exchanged for the drugs.

Simms and some other police officers went immediately to Fifth and O Streets, where they saw a man who matched the description provided by the caller walking away from an orange Pontiac. When he saw the police approaching, this man became "very loud and disorderly and began to start a fight." During the fracas, the orange Pontiac started up and drove away.

Simms then radioed a description of the Pontiac to other police units in the field. About five minutes later he received word that the car had been stopped a few blocks away, at the corner of Fourth and K Streets. When Simms and the other officers went to that intersection, they found the two occupants of the Pontiac, one of whom was appellant, standing outside the car. Appellant had evidently been in the front passenger seat.

Officer Yvonne Moore, who was accompanying Simms, saw appellant put a pouch on top of the car. Moore opened the pouch

and found eight pink pills and a packet of white powder. Appellant was then placed under arrest, and a search incident to that arrest revealed a plastic pouch inside her slacks containing eighty more pink pills. The pills were later analyzed and found to be phenmetrazine, and the white powder proved to be heroin.

After the trial court denied her motion to suppress evidence, appellant was found guilty, in a stipulated trial, of possession of phenmetrazine with intent to distribute it (D.C.Code § 33–541(a)(1) (1984 Supp.)) and possession of heroin (D.C.Code § 33–541(d) (1984 Supp.)).

## II

Appellant contends that the "anonymous" tip which resulted in her arrest was unreliable and therefore insufficient to establish probable cause. We disagree because the caller was previously known to the police, because her calls had led to seizures of illicit drugs on several occasions, and because several details of her tip were later corroborated by the arresting officers.

■ First, we must dispose of one premise of appellant's argument. She maintains that the caller's tip failed to meet the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Two years ago, however, the Supreme Court discarded the *Aguilar-Spinelli* test and adopted a new standard for probable cause, based on the "totality of the circumstances," in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the more flexible *Gates* approach, the two *Aguilar-Spinelli* requirements of "basis of knowledge" and "veracity" are now viewed "simply as closely intertwined issues that may usefully illuminate the com-

monsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Gates, supra,* 462 U.S. at 230, 103 S.Ct. at 2328. This court in *Jefferson v. United States*, 476 A.2d 685 (D.C.1984), followed the lead of the Supreme Court and abandoned *Aguilar-Spinelli* in favor of *Gates*. Thus the strict requirements of *Aguilar* and *Spinelli* are no longer applicable in the District of Columbia. Instead, we must look to the totality of the circumstances in order to determine whether the facts known to the arresting officers in any given case add up to probable cause.

■ This case presents us once again with a situation we have encountered in countless cases: police acting on information given to them by a citizen about recent or ongoing criminal activity. This and other courts have long recognized a "presum[ption] that a citizen is prima facie a more credible source than a paid police informant." *Rushing v. United States*, 381 A.2d 252, 255 (D.C.1977) (citation and footnote omitted);[1] *accord, e.g., United States v. Walker*, 294 A.2d 376, 378 (D.C. 1972). If the citizen claims or appears to be a victim of a crime or an eyewitness to a crime, the reliability of his or her information is greatly enhanced. *Rushing v. United States, supra,* 381 A.2d at 255; *Lawson v. United States*, 360 A.2d 38, 40 (D.C. 1976); *McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir.), *cert. denied,* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969).

This court on many occasions, in widely varied factual settings, has upheld stops and protective frisks based entirely on information provided by anonymous citizens. *E.g., United States v. Mason*, 450 A.2d 464 (D.C.1982); *Lawson v. United States, supra; United States v. Cousar*, 349 A.2d 454 (D.C.1975) (stop of a car, based on anonymous tip that driver was carrying a

---

1. We also observed in *Rushing,* however, that "a citizen who prefers to remain anonymous would seem less reliable than a citizen who is willing to accept personal responsibility for his accusations." 381 A.2d at 255 (citations omit-

ted). *But see Lawson v. United States,* 360 A.2d 38, 40 (D.C.1976) ("The report of an eyewitness is sufficient to provide the basis for further police investigation whether or not the witness is willing to identify himself").

loaded pistol, held reasonable); *United States v. Walker, supra* (citizen refused to give his name to the police when asked); *Murphy v. United States,* 293 A.2d 849 (D.C.1972); *United States v. Frye,* 271 A.2d 788 (D.C.1970); *Gaskins v. United States,* 262 A.2d 810 (D.C.1970). In *Galloway v. United States,* 326 A.2d 803 (D.C. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), we went even further and held that a tip from a citizen, which the arresting officer was able to corroborate in part by his own observation, gave that officer probable cause to stop a car and search it for weapons. We held in addition that "[a]n informant who is an eyewitness to or a victim of the crime he subsequently reports satisfies [the] requirements [of *Aguilar* and *Spinelli*]." *Id.* at 805 (citations omitted).[2] *See also Carter v. United States,* 244 A.2d 483 (D.C.1968) (report of a robbery from an anonymous citizen claiming to be an eyewitness held sufficient to give police officers probable cause for an arrest and search, even though the report later turned out to be false); *Payne v. United States,* 111 U.S.App.D.C. 94, 294 F.2d 723, *cert. denied,* 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961) (after telling a police officer that someone had tried to "flimflam" him, citizen pointed to a car leaving a nearby parking lot and said, "There's the man there"; warrantless arrest of driver held to be based on probable cause).

■ In this case, unlike the ones we have just cited, the citizen was not totally anonymous. Although Officer Simms did not know her name, he had spoken with her on several prior occasions, recognized her voice, knew approximately where she lived, and also knew that she was active in her community's campaign against drug traffic. Information she had given the police in the past had frequently resulted in the seizure of narcotics. Her active role in the community effort against drugs strongly suggests that she was an "unquestionably honest citizen com[ing] forward with a report of criminal activity...." *Illinois v. Gates, supra,* 462 U.S. at 233, 103 S.Ct. at 2329. All of these factors, singly or in combination, support an inference that her information was reliable.

■ In addition, Officer Simms corroborated several of the details which the caller provided. She had said that a man wearing a pink shirt, blue jeans, and Nike tennis shoes was selling "bam" from an orange Pontiac at the corner of Fifth and O Streets. When Simms arrived at Fifth and O Streets five minutes later, he saw a man fitting that description walking away from an orange Pontiac. Even though these details did not themselves establish that the man was committing a crime, we have held that "such corroboration is of significant value" in establishing probable cause. *Jefferson v. United States, supra,* 476 A.2d at 686, citing *Illinois v. Gates, supra,* 462 U.S. at 243–244 n. 13, 103 S.Ct. at 2334–2335 n. 13; *see Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Myers,* 176 U.S. App.D.C. 76, 78, 538 F.2d 424, 426 (1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51

---

**2.** We apparently assumed in *Galloway* that the *Aguilar-Spinelli* test applied to information given to the police by private citizens. *See also Rushing v. United States, supra,* 381 A.2d at 254–255. But there has always been some dispute about this. The Fifth Circuit, for example, declined to follow *Aguilar* and *Spinelli* in assessing the report of an "identified bystander or victim-eyewitness to a crime" in *United States v. Bell,* 457 F.2d 1231, 1238 (5th Cir.1972). The Second Circuit ruled likewise in *United States v. Burke,* 517 F.2d 377, 380 (2d Cir.1975):

[T]here has been a growing recognition that the language in *Aguilar* and *Spinelli* was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime.

*See also McCreary v. Sigler, supra,* 406 F.2d at 1269. This court has never squarely held that *Aguilar* and *Spinelli* applied to a tip from a citizen; *Rushing* is probably as close as we have ever come. We need not decide the question now, however, since *Aguilar* and *Spinelli* have been put out to pasture.

L.Ed.2d 584 (1977). *See also Murphy v. United States, supra.*

Appellant also contends that the citizen's tip was fatally defective because Officer Simms was unable to recall whether his caller told him she had seen others give money to the man in the pink shirt when he gave them the drugs. To support this argument, appellant relies principally on *Vicks v. United States*, 310 A.2d 247 (D.C. 1973). But *Vicks* is readily distinguishable from this case. We held in *Vicks* that when a police officer had seen no two-way exchange of drugs for money *and* no drugs were in plain view, the officer did not have probable cause for a search. In the instant case, however, the citizen told Officer Simms that she had seen a man distributing "bam" (phenmetrazine) on a street corner. Phenmetrazine is a controlled substance, D.C.Code § 33–516(3)(C) (1984 Supp.), and distributing a controlled substance is a crime, D.C.Code § 33–541(a) (1984 Supp.). The citizen, therefore, was reporting to Officer Simms that she had seen a crime committed before her very eyes. That information went well beyond what was known to the officer in *Vicks*.

 Finally, appellant claims that the trial court's denial of the motion to sup-

press was improperly based in part on the "escape" of the orange Pontiac. Flight can be an important factor in determining probable cause. *E.g., United States v. McCarthy*, 448 A.2d 267, 270 (D.C.1982); *Tobias v. United States*, 375 A.2d 491, 494 (D.C. 1977). We see nothing wrong with the trial court's consideration of the flight of the orange Pontiac as one factor among many justifying appellant's arrest, if in fact the court did consider it (the record is not clear on this point). Probable cause was established, in any event, when Officer Simms arrived at Fifth and O Streets and corroborated the tip given to him by the citizen over the phone. The sudden departure of the Pontiac merely reinforced the probable cause that already existed.

We hold that the trial court did not err in denying the motion to suppress the drugs. Appellant's conviction is therefore

*Affirmed.*