Kirby R. SANDERS, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–1411.

District of Columbia Court of Appeals.

Argued Oct. 28, 1999.
Decided May 25, 2000.

Andrew J.J. Delehanty, Washington, DC, appointed by the court, for appellant.

Karen Davis Miller, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, John R. Fisher, Elizabeth Trosman and Arvind K. Lal, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and SCHWELB, Associate Judges, and FERREN, Senior Judge.

STEADMAN, Associate Judge:

Acting on a telephone tip from a person who was known to police by voice but not by name, police officers searched appellant's car and found cocaine. At trial, appellant moved to have the cocaine suppressed on the ground that the police lacked probable cause to search. The trial court denied the motion. Appellant then pled guilty to possession with intent to

distribute, D.C.Code § 33–541(a)(1).[1] Having preserved the issue pursuant to Super. Ct.Crim. R. 11(a)(2), he argues on appeal that the suppression ruling was erroneous. Because the record developed in the trial court does not contain sufficient indicia of reliability to support a finding of probable cause, we reverse and remand with directions to grant appellant's motion to suppress.

## I.

Viewed in the light most favorable to the government, *In re T.L.L.*, 729 A.2d 334, 339 (D.C.1999), the facts as presented to the trial court were as follows. On August 22, 1996, Metropolitan Police Sgt. Gregory Wilson received a call at his desk. Although Sgt. Wilson had been out of the particular police district since May 1994, he immediately recognized the caller as a tipster with whom he had personally spoken five or six times prior to May 1994, but whose name or other identifying characteristics he did not know. The caller told Sgt. Wilson that a tall, dark-complected black man, wearing dark shorts and a white tee-shirt, was "working" out of the trunk of a car parked at the intersection of Fourth and L Streets, S.E. Sgt. Wilson took this description to mean that the man was selling drugs.[2] The informant described the car as a blue Datsun Z with damage to the left rear and District plates.[3]

At Sgt. Wilson's direction, Officer Seth Weston and two other officers arrived at Fourth and L about fifteen minutes later and confirmed the innocent details of the tip, in particular the presence of a car matching the description and a man nearby matching the description. However, the man was not sitting in the car or involved in any suspicious activity when the officers arrived, and when he was unable to produce identification the officers decided not to detain him.

Soon thereafter, one of the officers asked loudly whether anyone owned the car and received no answer.[4] The officers then searched the car.[5] Inside the trunk they found seventeen small bags of cocaine inside a larger bag. They immediately impounded the car.

Subsequently, during an inventory search, a Maryland learner's permit and District identification card belonging to appellant, the owner of the car, were recovered from the glove compartment. The officers recognized appellant's picture on the documents as portraying the man to whom they had spoken at the scene.

## II.

Since this case involves a tip, we must look to the "totality of the circum-

---

1. Appellant was given a suspended sentence and two years probation.

2. In Sgt. Wilson's experience, the trunk was not an unusual place for drug dealers to keep their "stashes."

3. The tipster did not give the plate number. There is actually some confusion in the record about whether the tipster referred to a "Datsun Z" or a "Nissan 300 ZX", but no one attempted to clarify this issue at the suppression hearing and neither party attaches any significance to it on appeal.

4. The government does not argue that appellant disclaimed ownership of the car and therefore lacks standing to challenge the search, presumably because Officer Weston could not recall whether anyone asked appellant personally whether he owned the car or even whether appellant was still in the area when the officer called out. *See Mills v. United States*, 708 A.2d 1003, 1006–08 (D.C.1997) (discussing standing).

5. The officers did not need to use force to access the car because it had an open top and the keys were lying inside on the floor. *Of course*, the officers could have used "any reasonable means" to open the car if they had probable cause. *Speight v. United States*, 671 A.2d 442, 453 n. 12 (D.C.), *cert. denied*, 519 U.S. 956, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996). Similarly, the officers did not need to obtain a warrant if they had probable cause. *See Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.").

stances" to answer the "practical, commonsense question" whether there was probable cause to believe that the trunk of appellant's car contained contraband.[6] *See Allen v. United States,* 496 A.2d 1046, 1048 (D.C.1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). We defer to the trial court's findings of fact if they are supported by substantial evidence, but review the conclusion that probable cause existed *de novo* since that is ultimately a question of law. *See United States v. Watson,* 697 A.2d 36, 38 (D.C.1997).

The baseline from which we must start is the Supreme Court's most recent unanimous pronouncement on anonymous tips in Fourth Amendment searches and seizures, *Florida v. J.L.,* — U.S. —, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).[7]

*J.L.* involved a *Terry* [8] stop based on a completely anonymous telephone tip that a young black man wearing a plaid shirt, standing at a particular bus stop, was carrying a gun. The two officers who responded to the scene confirmed the innocent details of the tip but saw no suspicious activity. Nonetheless, they frisked J.L., a young black man wearing a plaid shirt, and recovered a gun. The Supreme Court held that the gun had to be suppressed because police corroboration of innocent details of this anonymous tip, from someone about whom the police knew nothing, was insufficient to create even the "articulable suspicion" necessary for a *Terry* stop. The Court put the issue:

> Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. As we have recog-

nized,. however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.

*Id.* at 1378 (internal quotation marks and citation omitted). As an example of a case in which there were sufficient indicia of reliability, although it was "borderline," the Court cited *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301(1990), in which the police significantly corroborated the predictive details of an anonymous tip before making a *Terry* stop. *Id.*

Of course, accurate prediction of future events has no "talismanic quality" and is only one indicium of reliability. *Gomez v. United States,* 597 A.2d 884, 889 n. 9 (D.C. 1991). In the case before us, two indicia of reliability are present that were lacking in the anonymous tip of *J.L.:* eyewitnessing and a past record. The issue is whether they were sufficient to move the situation not just to the level of articulable suspicion but to the "substantially" higher level of probable cause. *T.L.L., supra,* 729 A.2d at 339.

Although one might have suspected that the anonymous tipster in *J.L.* had firsthand knowledge of the gun possession, the Supreme Court took pains to point out that the informant "neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *J.L., supra,* — U.S. at ——, 120 S.Ct. at 1379. In our case, Sgt. Wilson made clear, albeit not until cross-examination, that the informant "said he saw him working out of the trunk." In *Ware v. United States,* 672 A.2d 557, 563

---

**6.** No one challenges that the officers needed probable cause to search the car.

**7.** We delayed decision in this case pending the Supreme Court's resolution of *J.L.* See *supra* note 1.

**8.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

(D.C.1996), we observed that "when a citizen appears to have personally observed a crime, the reliability of his or her information is greatly enhanced." The "anonymous" source in that case, however, was a woman who approached a police officer in person to report an observed crime and thus subjected herself to future recognition by the officer. Here, the informant was faceless and nameless, the more classic "anonymous" tipster. We took note of the distinction in *Ware* itself. *See id.*

A more marked distinction between *J.L.* and the case before us is that the tipster was not in fact a first-time unknown caller. Perhaps the most telling indicia of reliability can be a tipster's track record, *i.e.* the number, frequency, content, accuracy (in both innocent and non-innocent detail), and productivity of any past tips. *See, e.g., Jefferson v. United States,* 476 A.2d 685, 687 (D.C.1984) (evaluating a tipster's track record). Unlike the tipster in *J.L.,* the tipster in the instant case, although anonymous, did have some track record with Sgt. Wilson. That track record as presented might have been enough to create articulable suspicion for a *Terry* stop here. Fully developed, it might have even met the higher standard for probable cause.[9]

■ In fact, however, the tipster's track record was thinly developed in the trial court, and it is well-established that a court may not simply rely on a police officer's conclusory assertions in deciding whether a search or seizure was justified under the Fourth Amendment, but rather must evaluate the facts underlying those assertions. *See Nance v. United States,* 377 A.2d 384, 386 (D.C.1977) ("the Supreme Court has declared that the judicial officer must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause" in order to avoid becoming a mere "rubber stamp for the police") (citations omitted), *overruled in part, Jefferson, supra,* 476 A.2d at 685; *T.L.L., supra,* 729 A.2d at 343 (suppressing evidence where, regardless of the actual facts, sufficient facts "were not communicated to the trial court" to support a finding of articulable suspicion).

■ Here there is little more in the record than a conclusory assertion by Sgt. Wilson that the tipster had been reliable in the past. Sgt. Wilson testified that he had personally spoken with the tipster five or six times prior to May 1994 and that the tipster had never given "incorrect" information on those occasions. However, Sgt. Wilson only briefly alludes to the actual nature of those tips, in the following exchange:

Counsel: What kind of information was this that this person was giving you?

Wilson: The person would give me information. A lot of the information that he gave me was information that we already knew.[10]

**9.** We do not read *J.L.* as necessarily foreclosing the possibility that a technically "anonymous" tip could over have sufficient indicia of reliability to create probable cause. *Compare J.L., supra,* — U.S. at ——, 120 S.Ct. at 1381 (J. Kennedy, concurring) ("It seems appropriate to observe that a tip might be anonymous in some sense yet have certain other features, either supporting reliability or narrowing the likely class of informants .... For example, if an unnamed caller with a voice which sounds the same each time tells police on two successive nights about criminal activity which in fact occurs each night, a similar call on the third night ought not be treated automatically like [the first tip].") *with Allen, supra,* 496 A.2d at 1046 (probable cause existed once officers corroborated the innocent details of a telephone tip where the tipster did not give her name but the officer who took the call recognized her voice, knew that she was not a paid informant, knew that she lived near the location given in the tip, knew that she was active in her community's campaign against drugs, and had been personally involved in several seizures of drugs based on her tips). Plainly far more was known about the personal characteristics of the informant in *Allen* and her proven reliability than in the case before us, so far as the record shows.

**10.** In fact, Sgt. Wilson clarified elsewhere in his testimony that the tipster had never before supplied information the police did not already have. However, we cannot accept appellant's suggestion that this fact alone renders the past tips irrelevant to the reliability determination.

Counsel: I am not sure I understand?

Wilson: Like, if he was saying there were certain houses or apartments that were facilitating the trafficking of narcotics, we would already know about these. If he gave us, say, certain persons coming down there in a certain car, we would already have information already, intelligence already, that this car was, indeed coming to the area.

Counsel: Did—on any of those occasions, prior to May of '94, had you—had you—had this person ever given you incorrect information?

Wilson: No, sir.

Assuming these examples reer to one or more actual past tips, there is little to be gleaned about their nature from this testimony, or even what it means that the tips were never "incorrect." Further, we know nothing about the other tips received by Sgt. Wilson, how many tips were drug-related, how many tips were eyewitness, or over how long a period the tips were made. No record was kept of the tipster's calls, either to the police in general or to Sgt. Wilson in particular, and, at best, the most recent other tip to which Sgt. Wilson testified was made over two years earlier.

We do not challenge the importance of tipsters and other informants in modern police work. In the instant case, it is possible that the complete track record of the tipster actually known to the police could have constituted probable cause to search. The tipster's eyewitness claim and the minimal evidence of his or her track record presented to the trial court may have been sufficient indicia of reliability to create articulable suspicion for a *Terry* stop. More extensive on-the-scene surveillance might have provided further corroborative information. However, we are faced with a question of probable cause

and, especially given the Supreme Court's recent guidance in *J.L.*, we must conclude that there was insufficient indicia of reliability in this record to support a finding under that higher standard.

Accordingly, the order appealed from is reversed and the case remanded with directions to grant the motion to suppress and for further proceedings consistent with this opinion.[11]

*Reversed and remanded.*

---

**11.** In directing the grant of the motion, we follow *Nance, supra,* 377 A.2d at 390 (reversing and remanding "with directions to suppress the evidence"), and the government does not make a fall-back argument otherwise. *See also T.L.L., supra,* 729 A.2d at 343. *Cf. United States v. Bayless,* 201 F.3d 116, 131 (2nd Cir.2000); *McRae v. United States,* 137 U.S.App. D.C. 80, 420 F.2d 1283 (D.C.Cir. 1969).