**John Henry DAVIS, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 97–CF–1882.**

District of Columbia Court of Appeals.

Argued July 17, 2000.

Decided Sept. 21, 2000.

Chukwuma Odelugo, Washington, DC, for appellant.

Florence Pan, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, and Alan M. Boyd, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

Following the denial of his motion to suppress tangible evidence, John Henry Davis, Jr., entered a conditional plea of guilty to possession of crack cocaine with intent to distribute it (PWID). On appeal, Davis contends that the trial judge erred in denying his motion to suppress. Although we agree with the motions judge that the dispositive question, namely, whether the arresting officer had probable cause to search Davis, "is a close call indeed," we discern no error. Accordingly we affirm.

## I.

## THE TRIAL COURT PROCEEDINGS

The sole witness at the hearing on Davis' motion was Officer Mark Frantzen of the United States Secret Service.

Frantzen testified that at approximately 1:55 a.m. on September 23, 1995, he was transporting a recovered stolen Honda automobile to the Metropolitan Police Department's (MPD's) impound lot at 9th and L Streets in northwest Washington, D.C. Frantzen, who was in uniform, was driving south on 9th Street when he was flagged down by a citizen at the intersection of 9th and T Streets, N.W. The citizen, who was on foot, told the officer that he had seen a black man in a wheelchair in the 1800 block of 9th Street selling crack cocaine out of his right shoe. The citizen stated that the alleged seller had approximately twenty ziplock bags secreted in the shoe.

Officer Frantzen asked the informant to identify himself, but the man declined to do so. According to Frantzen, the citizen

> was acting very nervous. He wanted to get out of the area. He was being real brief with me. His statements were quick as far as the description of the individual and where the narcotics were.... He said he lived in the area and that, you know, he feared for his safety by giving this information to the police, that he just wanted to get this information out and be on his way.

The citizen did reveal that he had worked for Officer Queen, a vice officer from the MPD's Third District. Frantzen testified that he was acquainted with Queen.[1] Although Frantzen was able to recall and describe in some detail his informant's appearance,[2] he knew very little more about the man.[3]

> Q. Okay, officer. Let's go back to this informant, this person you saw. This informant did not give you his name, did he?
> A. The citizen did not give me his name, no, sir.
> Q. He didn't give you his telephone number?
> A. No, sir.
> Q. You have never seen him before?
> A. No.
> Q. He would not identify himself?
> A. That's correct.

---

1. Frantzen explained that, for approximately six months, he had been part of a "metropolitan initiative" in which the Secret Service had worked with the Third District in the area where these events took place. He stated that he "came to know this area as a high area for narcotics and weapons offenses."

2. According to the officer, the citizen was "a black male, approximately 5'8" [to] 5'10" in height, 160, 170, was wearing jeans and, I believe ... [an] army fatigue field jacket."

3. The cross-examination of Frantzen by Davis' attorney included the following:

After receiving the tip, Officer Frantzen drove south on 9th Street and looked to his left on T Street. He observed a black man in a wheelchair at the exact location where the informant had said the suspect would be. Two other men were standing at a wrought iron fence gate nearby.

Officer Frantzen drove the stolen car to the impound lot a few blocks away. There, Frantzen advised his partner of the information that the citizen had provided, and the two officers proceeded to 9th and T Streets. The man in the wheelchair, later identified as appellant John Henry Davis, Jr., was still at the same location, and the two men Frantzen had seen before remained in the vicinity.

Officer Frantzen approached Davis [4] and noticed that the laces on Davis' work-type boots were untied. He told Davis that he (Frantzen) had received a complaint that Davis was selling narcotics in the area and that "I need to see, you know, if you [have] got any drugs on you." Davis responded that he was not selling drugs, and he denied that he had any drugs on him. Frantzen described the events that ensued:

Q. Okay. And what did you do next?

A. The citizen who had told me said it was in the right shoe. So, I immediately just went to the right shoe and looked to see if there [were] any narcotics there. And I found a sandwich bag with several ziplocks of a white rock like substance contained there.

Q. What did you do next?

A. At that time I called for another crime-scene-search officer to come and field test the narcotics, turned

that over to him.[5] He field tested it.

Q. Well, let me stop you. After you found the sandwich bag in his foot did the defendant say anything?

A. Yes. He said, you got me.

Q. Did you prompt him in any way to say that?

A. No.

Following the discovery of the cocaine, Davis was arrested and charged with PWID.

Davis filed a motion to suppress evidence and statements, arguing that prior to the recovery of the contraband, the police lacked probable cause to search him. The motions judge initially perceived potential merit in Davis' position, asking rhetorically whether it was not "the reasonable thing for the officer to make further inquiry of the defendant instead of reaching immediately into the boot." He added that "[o]n its face my intuition is, that's unreasonable what the officer did." After reviewing the authorities cited to him by counsel, however, the judge concluded that the government had established probable cause:

I carefully read the authorities cited by both sides and contemplated the matter. This is a close call indeed. And there are some distinguishing factors between Mr. Davis' case and [*Parker v. United States*, 601 A.2d 45 (D.C.1991) ]. But I do believe, somewhat to my surprise, that the Court of Appeals in *Parker* supports the conduct taken by the officers in this case. I think that this case is sufficiently analogous to *Parker* to be—for the officer's conduct to be sup-

---

Q. He didn't tell you if he bought anything from this person he saw, did he?

A. No, he did not.

Q. He told you that he had been in contact with a 3–D officer, and you said by the name of Officer Queen; is that correct?

A. Yes, sir.

Q. You did not contact Officer Queen before you approached Mr. Davis that night, did you?

A. No.

**4.** Frantzen's partner approached the other two men, but the record does not disclose any additional information about them.

**5.** Frantzen recovered a total of twenty-two ziplock bags of crack cocaine.

ported. And I find the seizure of the drugs based on the information of the informant which I think the officer could find to be credible, especially after he found corroboration of much of what that citizen said seconds after he drove off from the corner of 9th and T and saw the defendant there on the sidewalk, and then returned, of course, five to six minutes later.

And therefore relying on *Parker* principally I'm denying the motion to suppress tangible evidence. I find Mr. Davis' statement to be a spontaneous utterance, not the product of custodial interrogation. And the motion to suppress that statement is denied as well.

After making the foregoing ruling, the motions judge accepted Davis' conditional plea of guilty. The trial judge sentenced Davis to a term of imprisonment, to be followed by a period of probation. This appeal followed.

## II.

### LEGAL DISCUSSION

A. *Probable cause and the standard of review.*

■ It is undisputed that Officer Frantzen's intrusion into Davis' shoe to retrieve the drugs, which were not in plain view, constituted a "search" within the meaning of the Fourth Amendment's proscription against unreasonable searches and seizures.[6] Both parties thus agree that the proper disposition of this appeal turns on whether, at the time the search was conducted, the officer had probable cause to arrest Davis and to search him incident to that arrest. *See Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Officer Frantzen had probable cause if "the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy in-

formation were sufficient to warrant a prudent [officer] in believing that [Davis] had committed or was committing an offense." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Probable cause is a "common-sense, nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citations and internal quotation marks omitted).

■ In reviewing the denial of Davis' motion to suppress evidence, "our role is to ensure that the trial court had a substantial basis for concluding that probable cause existed." *Parker, supra,* 601 A.2d at 49 (quoting *Goldston v. United States,* 562 A.2d 96, 98 (D.C.1989) (internal quotation marks omitted)). The record must be viewed in the light most favorable to the party that prevailed in the trial court, and all reasonable inferences from the evidence must be drawn in that party's favor. *See, e.g., Cauthen v. United States,* 592 A.2d 1021, 1022 (D.C.1991). The trial court's ultimate conclusions of law are reviewed *de novo. See Ornelas, supra,* 517 U.S. at 697–99, 116 S.Ct. 1657.

B. *The easier cases—anonymous telephone tips and in-person reports by identified victims or eyewitnesses.*

■ The present case falls somewhere between two well-established and familiar lines of authority. On the one hand, an anonymous telephone tip is ordinarily insufficient to establish probable cause for an arrest, *Sanders v. United States,* 751 A.2d 952, 953–56 (D.C.2000); or even reasonable articulable suspicion warranting a *"Terry* stop." *See, e.g., Florida v. J.L.,* 529 U.S. 266, —— – ——, 120 S.Ct.

---

6. The government has quite appropriately conceded that Officer Frantzen's actions in reaching into Davis' boot cannot fairly be characterized as an investigatory stop and

protective frisk of the kind permitted by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

1375, 1378–80, 146 L.Ed.2d 254 (2000).[7] Moreover, confirmation by the police of innocent information provided by the tipster is insufficient to support a *Terry* seizure, for "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 1379 (citation omitted). A less exacting burden for establishing articulable suspicion "would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun."[8] *Id.* at 1379–80. In *J.L.*, the Court differentiated the case of the anonymous telephone tipster from that of "a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated." *Id.* at 1378. Information from such an informant will support, at least, a finding of articulable suspicion.[9]

A contrasting line of authority applies to information provided to the police by persons who have identified themselves as victims of, or witnesses to, criminal acts. "[P]robable cause is established where (a) the victim of an offense (1) communicates to the arresting officer information affording credible ground for believing that the offense was committed and (2) unequivocally identifies the accused as the perpetrator, and (b) materially impeaching circumstances are lacking." *Pendergrast v. United States*, 135 U.S.App.D.C. 20, 26, 416 F.2d 776, 785, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); *see also United States v. Anderson*, 175 U.S.App.D.C. 75, 78, 533 F.2d 1210, 1213 (1976) (quoting *Pendergrast*). This is so because "[a]n asserted victim of a crime is a reliable informant even though his or her reliability has not theretofore been proved or tested." *Anderson, supra,* 175 U.S.App.D.C. at 78, 533 F.2d at 1213 (citation omitted). Probable cause to arrest exists if a police officer "either had firsthand knowledge or received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth." *Daniels v. United States*, 129 U.S.App.D.C. 250, 252, 393 F.2d 359, 361 (1968) (per curiam).

In *Parker v. United States, supra,* 601 A.2d at 48—the decision which the motions judge cited in support of his decision—a woman, who was a witness rather than a victim, flagged down a police officer and advised him that drugs were located in a paper bag on the front seat of a brown Plymouth. The officers located the automobile and observed the bag, opened it, and discovered that it contained cocaine. This court held that the police had probable cause to search the Plymouth. We stated in *Parker* that

> [a]s to credibility, the informant in this case was a citizen who gave her name and address to police. In identifying herself, she exhibited a willingness to be held accountable for the information she had provided to police. We have recognized that a citizen informant, particularly one who identifies herself, is a "more credible source than a paid police informant."

601 A.2d at 49 (quoting *Allen v. United States*, 496 A.2d 1046, 1048 (D.C.1985)). *Parker* is thus distinguishable from the present case in that in *Parker* the infor-

---

7. Reasonable articulable suspicion is a substantially less onerous standard than probable cause. *See, e.g., Gomez v. United States*, 597 A.2d 884, 888–89 (D.C.1991).

8. In *Florida v. J.L.*, the Supreme Court declined to make an exception from this requirement in a case in which the anonymous caller reported that the target had a handgun.

9. *See also Sanders, supra,* 751 A.2d at 955 n. 9 ("We do not read *J.L.* as necessarily foreclosing the possibility that a technically 'anonymous' tip could ever have sufficient indicia of reliability to create probable cause.").

mant provided his name and address to the police, while in this case, the informant declined to do so.

### C. *In-person tips from unidentified informants.*

The state of the authorities is less clear where, as in this case, information has been provided to the police by a citizen who has not disclosed his name and address, either because he has been unwilling to do so or because he has not been asked for the information. In *United States v. Sierra–Hernandez,* 581 F.2d 760, 763 (9th Cir.1978), the court, speaking through Judge (now Justice) Kennedy, observed that

> [i]nformation from a citizen who confronts an officer in person to advise that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer.

We have likewise stated that "when a citizen appears to have observed a crime, the reliability of his or her information is greatly enhanced." *Sanders, supra,* 751 A.2d at 954–55 (quoting *Ware v. United States,* 672 A.2d 557, 563 (D.C.1996)). In *Sanders,* an anonymous telephone tip case, we went on to distinguish *Ware* as follows:

> The "anonymous" source in that case ... was a woman who approached a police officer in person to report an observed crime and thus subjected herself to future recognition by the officer. Here, the informant was faceless and nameless, the more classic "anonymous" tipster....

751 A.2d at 955.[10]

The requirements of "reliability" and "particularity" applied by the courts to information supplied by anonymous telephone tipsters thus "do not apply with equal force when the police are approached on the street by an unknown citizen who claims to have been a victim of

the crime just moments before." *Anderson, supra,* 175 U.S.App.D.C. at 78, 533 F.2d at 1213. Further, "[s]ome courts indicate that a citizen, who is not connected with the police or who is not a paid informant, is inherently trustworthy, when he advises the police [that] a crime is being committed." *Sierra–Hernandez, supra,* 581 F.2d at 763 n. 1 (citations omitted). The parties have provided us with no clearly dispositive authority in this jurisdiction, and we have found none, with respect to a scenario of the kind presented here. The District of Columbia precedents, however, appear to tilt in the government's favor.

In *United States v. Walker,* 294 A.2d 376 (D.C.1972), a citizen approached two uniformed officers who were sitting in a police car. He reported that a man known to him as "Willie" was sitting on the porch of a nearby house with a pistol in his waistband. The citizen described "Willie's" clothing, and he stated that the man with the pistol had an artificial leg. As in this case, "[t]he informant was unknown to the officers and refused to give his name, saying he 'was afraid to be involved.' " *Id.* at 377. The officers proceeded to the house in question and found four men on the porch, one of whom, the defendant, William A. Walker, was apparently asleep. One of the officers felt Walker's legs, and he determined that the right leg was artificial. The officers awoke Walker, told him to place his hands on the porch, and discovered and removed a pistol from his waistband.

Reversing an order of the trial court suppressing the pistol, this court held that the seizure of the weapon was effected by a constitutionally permissible "frisk" conducted in conformity with the Supreme Court's decisions in *Terry v. Ohio* and in *Adams v. Williams, supra.* The court did not consider the informant's refusal to identify himself as dispositive:

---

10. *Sanders* and *Ware* are, however, distinguishable from the situation confronting us here. The question in both of those cases was

whether the police had reasonable suspicion to seize, not probable cause to arrest.

It is true that in *Adams* the information was given by an informant who was known to the officer and who had previously given him information, while here the information came from one unknown to the officers. The credibility of a paid or professional informer may be suspect, but in our opinion the same cannot be said of a citizen reporting a crime. While the citizen here did not specifically say he had seen the pistol in Willie's possession, such was the clear inference from his report.

*Id.* at 378 (footnote omitted).

Although *Walker* is similar to the present case in that the informants in both cases declined to identify themselves, and although the officer's action in *Walker* in feeling the defendant's legs was not a safety precaution and might reasonably have been viewed as a search requiring probable cause,[11] different legal issues were decided by the courts in the two cases. In *Walker*, the court grounded its decision on the theory that the police required only a reasonable articulable suspicion to take the actions they did. In the present case, on the other hand, the government has conceded that articulable suspicion analysis is inapplicable, and that the search of Davis can stand only if the police had probable cause. Nevertheless, the court's favorable comments in *Walker* on the reliability of the citizen informant, notwithstanding his refusal to provide his name, inform our inquiry in this case at least in some limited measure.

In *Galloway v. United States*, 326 A.2d 803 (D.C.1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), decided two years after *Walker*, a citizen, not otherwise identified, advised a police officer that the occupants of a certain automobile had a handgun. The citizen identified the vehicle by make, color, license tag, and number of occupants. The officer broadcast a "flash lookout" over the police radio. Twenty minutes later, another officer, who had monitored the lookout, observed the vehicle. After calling for assistance, the second officer stopped the car and "frisked" the occupants. The frisk was unproductive, but a search of the vehicle resulted in the discovery of a pistol under the driver's seat. The defendant, Charles H. Galloway, was arrested and charged with carrying a pistol without a license.

Galloway moved to suppress the pistol on Fourth Amendment grounds, claiming, *inter alia*, that "the report of a non-violent crime by an unidentified citizen" did not establish probable cause. The trial judge denied the motion, and this court affirmed. We held that the informant's reliability and basis of knowledge had been sufficiently demonstrated to support a finding of probable cause, for "[a]n informant who is an eyewitness to or a victim of the crime he subsequently reports satisfies these requirements." 326 A.2d at 805 (citations omitted). Because "the citizen's report here was of a rapidly moving street occurrence," this court found it "reasonable to conclude that such [a] report resulted from an eyewitness observation by that citizen." *Id.* The arresting officer having "immediately confirmed that report by his own observation to the extent of verifying the existence of the car, its make, color and tags, and the number of its occupants," *id.*, we concluded that the officer had "probable cause, under the facts and circumstances of this case . . ., to stop and search the car for the pistol." *Id.* (citation omitted).

The present case differs from *Galloway* in two respects. First, the comparative exigency of "a rapidly moving street occurrence" involving a firearm is not present here.[12] Second, there is no indication that

---

**11.** Indeed, the exploration of Walker's body, by touch, to determine whether he had an artificial leg arguably constituted at least as significant an intrusion upon Walker's privacy as Officer Frantzen's foray into Davis' open-laced boot.

**12.** Indeed, in this case, Officer Frantzen did not treat the situation as one presenting the

the citizen-informant in *Galloway* affirmatively refused to identify himself. Nevertheless, this court's conclusion that a finding of probable cause may be based upon a report from an unidentified citizen has obvious relevance to our inquiry.

In *Brown v. United States,* 125 U.S.App. D.C. 43, 365 F.2d 976 (1966), an officer monitored a radio lookout for a suspect in a robbery. Melvin L. Brown, whom the officer had stopped for a minor traffic offense, roughly matched the description of the suspect.[13] The officer searched Brown's car, he discovered the fruits of the robbery, and Brown was charged with the crime. Brown filed a motion to suppress tangible evidence, contending that the police lacked probable cause to arrest him or to search his vehicle.

At the hearing on the suppression motion, the victim was not identified, and the prosecution introduced no evidence regarding his reliability. Nevertheless, the trial court denied the motion, and the Court of Appeals affirmed. In an opinion written by Judge (later Chief Justice) Burger, the court stated, in pertinent part:

> That the information came from an unknown victim of the crime did not preclude the policeman's having probable cause to arrest Appellant on the basis of it. Although the police could not here judge the reliability of the information on the basis of past experience with the informant, ... the victim's report has the virtue of being based on personal observation ... and is less like-

ly to be colored by self-interest than is that of an informant.

125 U.S.App.D.C. at 46, 365 F.2d at 979 (citations omitted). *Brown* is distinguishable from this case, for there is no suggestion that the victim in *Brown* refused to provide his name. Moreover, the informant in our case did not claim to be a victim, although this difference is not especially significant, for a liar can falsely accuse his enemy of stealing his wallet as easily as he can assert that the man has been selling cocaine. In any event, the court held in *Brown* that the victim's report was sufficiently reliable to support a finding of probable cause, and that this was true notwithstanding the lack of any information in the record about the victim.

Courts in other jurisdictions have also dealt with issues which may arise where an unidentified tipster has provided in-person information to the police. In *Johnson v. State,* 50 Md.App. 584, 439 A.2d 607, 611 (1982), the court summarized the relevant authorities as follows:

> The overwhelming weight of authority among the courts that have considered the question is that where, as here, an *anonymous* informant voluntarily approaches a law enforcement officer and gives accurate, detailed, and at least partially verifiable information concerning possible criminal activity, that information may give the officer adequate reason to stop and frisk the suspect described by the informant; and, if the officer finds sufficient evidence through

---

need for immediate action. On the contrary, Frantzen left the scene without contacting the MPD or a colleague in the Secret Service, and he did not arrest Davis until a half-hour after he had received the citizen's report. Davis could easily have left the scene in the interim. Moreover, for aught that appears in the record, Davis may have sold cocaine to unknown buyers during Frantzen's absence.

We note, however, that the court in *Galloway* found the "rapidly moving street occurrence" scenario relevant only because, in the court's view, it could reasonably be inferred, under those circumstances, that the person making the report was an eyewitness. In this

case, it is undisputed that the informant claimed to have personally witnessed the criminal conduct. The distinction of *Galloway* founded on the absence here of a "rapidly moving street occurrence" is therefore not altogether persuasive.

13. The match was by no means perfect. The lookout described a black man 5'5" tall, wearing a brown jacket and a cream-colored straw hat. The defendant was 5'11" tall, he was wearing blue, and he had only a felt hat in the car. There was also a discrepancy regarding the age of the vehicle.

the "stop and frisk" to constitute probable cause, the resulting arrest will not be held invalid.

(Emphasis in original; citations omitted); *accord, People v. Tooks,* 403 Mich. 568, 271 N.W.2d 503, 504–08 (1978). It would appear to be implicit in the court's articulation in *Johnson* that, where no stop-and-frisk has been performed, and no new evidence has been discovered, a tip from the anonymous in-person informant would ordinarily be insufficient to support a finding of probable cause. Indeed, in *State v. Chatmon,* 9 Wash.App. 741, 515 P.2d 530, 534 (1973), a case in which an individual who reported suspected drug activity to the police in some detail, declined to identify himself, the court opined that "in the general case information supplied by an anonymous informant (as opposed to one known to the police but merely unidentified) cannot, standing alone, create probable cause." [14]

The Supreme Court has recognized, and so have we, the difficulties inherent in "case-matching" in Fourth Amendment litigation. "[B]ecause the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, one determination will seldom be a useful precedent for another." *Ornelas, supra,* 517 U.S. at 698, 116 S.Ct. 1657 (citation and internal quotation marks omitted). "Two cases are seldom sufficiently alike for the first to be an absolute binding precedent for the second." *Price v. United States,* 429 A.2d 514, 518 (D.C.1981) (citation omitted). By the same token, "not all anonymous informants are the same." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.4 (a), at 217 (1996) (quoting *State v. McCloskey,* 453 N.W.2d 700, 703 (Minn.

1990)). In *McCloskey,* a case in which the citizen-informant declined to tell police her name, the Supreme Court of Minnesota, after acknowledging that unidentified informant cases present a variety of fact patterns, sensibly rejected the option, and so do we, of "[s]imply saying that the informant here would not give his/her name and leaving it at that...." 453 N.W.2d at 703.

In *People v. Hoffman,* 45 Ill.2d 221, 258 N.E.2d 326 (1970), a case that takes us back to the uninhibited and sometimes colorful protests of yesteryear, an unidentified woman waved down a squad car and informed the officers that a man who had just passed her on a Chicago street had a non-exemplary four-letter expletive written in red letters on his forehead. The officers followed the man, who turned out to be "Yippie" leader Abbie Hoffman, into a restaurant. After Hoffman removed his hat at their direction, the officers observed the offending expletive decorating Hoffman's face, and they placed him under arrest.[15] In upholding the trial court's rejection of Hoffman's contention that his arrest was unlawful, the Supreme Court of Illinois stated:

> The officers here were justified in relying on the information received from the woman, and the usual requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens. [Citation omitted.] Accordingly, we find that these officers had probable cause to arrest defendant for disorderly conduct.

258 N.E.2d at 328 (punctuation slightly revised); *see also State v. Williams,* 638 S.W.2d 417, 420 (Tenn.Crim.App.1982) (up-

---

**14.** The court in *Chatmon* went on to state:

> In making [the required reliability] evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, the reliability of his information could certainly be corroborated by description of him, his purpose for being

at the locus of the crime, and the reason for his desire to remain anonymous.

515 P.2d at 535 (footnote omitted).

**15.** Hoffman did not cooperate with the officers' efforts to take him into custody. He was ultimately convicted of resisting arrest, but acquitted of the disorderly conduct charge which arose from the informant's complaint.

holding robbery conviction where officers apparently did not ascertain identity of person who reported the crime, since "[t]he reasonableness of the officers' action and the legality of the arrest in this case do[ ] not turn upon the name of the person who transmitted the information to the officers.... When the informant is an eyewitness, specific indicia of reliability or past reliable contact [are] not required."); *Vai v. State,* 482 S.W.2d 247, 250 (Tex. Crim.App.1972) (recognizing, in a different but related context, that "many citizens prefer to cooperate in anonymity with the police or fear possible retribution by the accused").

## III.

## APPLICATION OF THE LAW TO THE FACTS

■ Applying the teaching of the foregoing authorities to the present record, we conclude that for the reasons discussed below, the judgment should be affirmed.

First, the District of Columbia authorities, although not absolutely dispositive, tend to support the government's position. The issue decided in *Walker* was whether the police had articulable suspicion that the defendant was engaged in criminal conduct, but the nature of the police intrusion (and, to some extent, the court's view that in-person citizen-informants who decline to disclose their identities are nevertheless reliable) came close to implicating · probable cause analysis. *Galloway* is distinguishable because the informant apparently did not decline to identify himself, and arguably because we are not dealing here with a "rapidly developing street occurrence," but the tenor of the *Galloway* opinion as a whole suggests that these distinctions would not have been decisive. *Parker* is not controlling, for the informant in that case provided her name and address to the police, but we are reluctant, especially in light of *Walker,* to treat as dispositive the understandable refusal of the informant in the present case to do the same. *Brown* is likewise distinguishable

for the reasons previously noted, but the court in that case too sustained a finding of probable cause on the basis of a report by an unidentified victim. Taken together, these decisions place formidable impediments in the appellant's path as he seeks reversal of his conviction.

Second, the particular circumstances of this case suggest that the concerns animating the Supreme Court's decision in *Florida v. J.L.* have little application. The citizen-informant flagged down Officer Frantzen in the early hours of the morning. The officer was driving a stolen private vehicle, so that the citizen must have recognized him as an officer only because Frantzen was in uniform. It is unlikely that the informant was expecting a uniformed officer to drive by that intersection at that particular hour. The circumstances thus do not suggest that the citizen was acting on a previously devised plan to "harass" or "embarrass" an innocent enemy. *Cf. Florida v. J.L., supra,* 529 U.S. at ――――, 120 S.Ct. at 1379–80. Had the citizen been so disposed, it would have been safer to telephone the police station, and such a plan would have minimized the prospect of his apprehension for giving a false report. Moreover, Davis was only fifty or sixty feet away at the time that the citizen provided information to Frantzen, and if the information had been false, it might quickly have been proved false. This being so, prudence would have counseled a dishonest accuser to choose a method of bearing false witness in which the deception would have been more difficult to detect.

Finally, Frantzen did not search or arrest Davis until after he had observed that Davis' shoelaces were unfastened. Viewed in the light most favorable to the government, this information cannot fairly be characterized as "innocent," at least in the same sense that the suspect's appearance, or clothing, or location are "innocent." To be sure, the law does not require a person to tie his shoelaces. Officer Frantzen

could, however, fairly take into consideration the fact that most people do not leave their boots untied. The citizen had advised Frantzen that the man in the wheelchair had the contraband concealed in his shoe. If this was true, then the drugs could be reached more easily if Davis did not have to untie his shoelaces. If the information provided by the citizen had been false, then the fact that the laces were untied would have been rather a remarkable coincidence. Officer Frantzen could reasonably decline to attribute to pure happenstance a circumstance which would make it easier for the suspect to commit the crime in the manner alleged by the informant.

In the final analysis, the issue of probable cause must be viewed from Officer Frantzen's perspective. Frantzen, an experienced police officer, saw and heard the citizen tell his story. Although the encounter was brief, Frantzen had some opportunity to gain an impression of the informant.[16] Subsequently, at the hearing, the motions judge observed the officer testify, and the judge's first-hand assessment of the officer's reliability and judgment must also be accorded some deference. This court must, of course, decide the legal issue *de novo*. Our precedents and the other authorities cited in this opinion are concededly less than absolutely dispositive, but they tend to support the government's position. Discerning no error of law in this close case, we are constrained to sustain the trial court's ruling.

*Affirmed.*

---

16. The officer was also aware that the area in question was known for drug activity and that the defendant and two other men had remained in the same location on the street for about one half hour in the early hours of the morning.