**Allen NIXON, Appellant**

v.

**UNITED STATES, Appellee.**

No. 02–CM–466.

District of Columbia Court of Appeals.

Submitted March 26, 2003.

Decided March 17, 2005.

Hope Umana, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, Ann H. Petalas, and Tracy N. Ferguson, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and REID, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of possession of cocaine. In the trial court he filed a motion to suppress the cocaine, which the police had seized from him after a brief street encounter. The court denied the

motion, whereupon the parties stipulated to a trial based on the testimony heard at the suppression hearing. Appellant was found guilty and sentenced to 180 days in jail, with credit for time served. From the final judgment appellant noted this appeal. We find no error and affirm the conviction.

## I

While on routine patrol during the afternoon of December 1, 2001, Metropolitan Police Officers Brian Wise and Berdette Williams were flagged down by a "concerned citizen" at First and S Streets, N.W. The citizen told the officers that some persons were using drugs inside a red "construction-type" pickup truck parked in front of his house in the 200 block of S Street. Officer Wise did not know the citizen or have any prior contact with him, nor did the citizen offer his name. When the officers went to the location stated by the citizen, Officer Wise saw a red pickup truck matching the description. Although the truck was unoccupied, two men were walking along the sidewalk toward the police car, about twenty feet away from the truck. One of those men was appellant. There were no other persons walking in the area, nor were there any other vehicles matching the citizen's description.

From the passenger seat of the police car, Officer Wise asked appellant if he had just left the truck.[1] Appellant answered, "Yes." To clarify that they were speaking about the same pickup truck, Officer Wise pointed to the red construction-type pickup and asked appellant if he left "that truck right there." Appellant again answered, "Yes." Officer Wise, now suspecting that appellant might have been involved in criminal activity, got out of the police car and asked appellant for identification; appellant replied that he had none. Officer Wise then informed appellant of the citizen's statement, which prompted appellant to modify his earlier admission by stating that it was his work truck, but he had not recently been in it.

At that point, Office Wise asked appellant if "he had any illegal contraband or anything ... on his person that [the officer] needed to be aware of."[2] Appellant replied that he had "one little bag," which the officer, from his experience, understood to mean that appellant possessed illegal drugs. He asked appellant to "retrieve" the bag and lay it on the hood of the police car. From his left pocket, appellant removed a blue ziplock bag and placed it where the officer had told him to put it. When the officer saw that the bag contained a white rock-like substance, he arrested appellant and charged him with possession of cocaine.[3]

Appellant presented no evidence.

After hearing argument, the court denied appellant's motion to suppress the cocaine. The court said it was satisfied, based on the totality of the circumstances, that Officer Wise had a reasonable articulable suspicion which justified his stopping appellant after he admitted being in the truck, given the report from the citizen that drugs were being used inside that same truck. The court also concluded that Officer Wise did not violate appellant's rights simply by asking him if he had any illegal items on his person, and that up to

---

1. This contact between appellant and the officer took place about ninety seconds after the police car was flagged down by the citizen.

2. Officer Wise did not, however, tell appellant that he intended to search him.

3. Up to this moment, the officer had not touched appellant.

that point appellant was not under arrest. However, the court said, "as soon as he saw the blue [ziplock bag]," the officer "had a right to effectuate the arrest."

Appellant then stipulated to a non-jury trial based on the record created at the hearing. A chemist's report, Form DEA–7, established that the white rock-like substance in the ziplock bag contained 35 milligrams of cocaine. The court accordingly found appellant guilty of possessing a controlled substance.

## II

■ To justify an investigative stop, the police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion sufficient to support a *Terry* stop is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). When a purported *Terry* stop is challenged, the court must look at the totality of the circumstances to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). "Even if each specific act by a suspect could be perceived in isolation as an innocent act, 'the observing police officer may see a combination of facts that make out

an articulable suspicion.' " *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc) (quoting *United States v. Bennett,* 514 A.2d 414, 416 (D.C.1986)). But to conduct a warrantless search of a person (as opposed to a mere frisk), the police must have probable cause, which arises when " 'a reasonably prudent police officer, considering the total circumstances confronting him and drawing from his experience,' would be warranted in the belief that an offense has been or is being committed." *Peterkin v. United States,* 281 A.2d 567, 568 (D.C.1971) (citations omitted).

■ This case presents us with two separate but related issues. First, we must determine whether Officer Wise had a reasonable articulable suspicion, based on the citizen's report and appellant's admission that he had been in the truck, which would justify a *Terry* stop.[4] Second, we must decide whether the officer had probable cause to search appellant once he admitted, in response to Officer Wise's inquiry, that he had contraband in his possession. We consider each issue in turn.

### A. *Reasonable suspicion*

In this case the police acted on "information given to them by a citizen about recent or ongoing criminal activity." *Allen v. United States,* 496 A.2d 1046, 1048 (D.C. 1985). Appellant attempts to characterize the concerned citizen as an anonymous tipster and fashions his argument accordingly. He relies on recent case law mak-

---

4. Merely asking appellant if he had just come from the truck did not rise to the level of a *Terry* stop. *See Florida v. Bostick,* 501 U.S. 429, 434–435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "A seizure does not occur simply because police officers approach an individual and ask a few questions." *Oliver v. United States,* 618 A.2d 705, 708 (D.C.1993); *accord, e.g., Kelly v. United States,* 580 A.2d 1282, 1285–1286 (D.C.1990); *United States v.*

*Smith,* 284 U.S.App. D.C. 64, 66, 901 F.2d 1116, 1118, *cert. denied,* 498 U.S. 863, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990). Rather, the *Terry* stop occurred after Officer Wise got out of his police car and asked appellant if he had any illegal contraband on his person. It is that precise moment on which we must focus in order to decide whether the officer had a reasonable articulable suspicion.

ing it difficult to justify a *Terry* stop based solely on an anonymous tip. *See Florida v. J.L.*, 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (an anonymous tip, without more, is not sufficient to justify an investigatory stop); *Davis v. United States*, 759 A.2d 665, 670 (D.C.2000) ("confirmation by the police of innocent information provided by the tipster is insufficient to support a *Terry* seizure, for '[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person'" (quoting *Florida v. J.L.*, 529 U.S. at 272, 120 S.Ct. 1375)). Appellant concedes in his brief, however, that this "is not exactly an anonymous tip case."

 Regardless of how appellant characterizes the report made by the citizen, "[t]his report was by all appearances that of a person who, almost contemporaneously, had personally observed the occurrence he was describing." *Lawson v. United States*, 360 A.2d 38, 40 (D.C.1976). Information conveyed to the police by such in-person informants, even if they do not reveal their names, is not subject to the same scrutiny as purely anonymous tips. *See Ware v. United States*, 672 A.2d 557, 563 (D.C.1996) ("the fact that the tip was given in person, rather than over the telephone, further strengthens its credibility");

*Lawson*, 360 A.2d at 40 ("The report of an eyewitness is sufficient to provide the basis for further police investigation whether or not the witness is willing to identify himself"); *see also Davis*, 759 A.2d at 675–676. Indeed, there is a "presum[ption] that a citizen is prima facie a more credible source than a paid police informant." *Rushing v. United States*, 381 A.2d 252, 255 (D.C.1977) (citation omitted); *see Lawson*, 360 A.2d at 39–40 ("The credibility of a paid or professional informer may be suspect, but in our opinion the same cannot be said of a citizen reporting a crime.")[5] Furthermore, "[i]f the citizen claims or appears to be a victim of a crime or an eyewitness to a crime, the reliability of his or her information is greatly enhanced." *Allen*, 496 A.2d at 1048 (citations omitted); *accord, Ware*, 672 A.2d at 563 (citing *Allen*).[6] In this case, not only was the citizen an eyewitness to a crime, but the information he provided to the police officers was given in person so that the police were able then and there to assess his reliability. Thus the presumption discussed in *Rushing* and similar cases applies here, and "the concerns animating the Supreme Court's decision in *Florida v. J.L.* have little application." *Davis*, 759 A.2d at 675.

With respect to the circumstances justifying the stop, the citizen's information

---

**5.** In *Parker v. United States*, 601 A.2d 45, 49 (D.C.1991), this court emphasized that the informant was willing to identify herself and provide her address. *See also Rushing*, 381 A.2d at 255. However, there is no bright-line requirement that an informant disclose his or her name. *See Lawson*, 360 A.2d at 40. In any event, the citizen in this case, though he did not state his name, told the officers that the red truck where the drug use was going on was "parked in front of his house ... in the 200 block of S [Street]" (Officer Wise could not "recall the exact address").

**6.** The facts in *Ware* are comparable to the facts in this case. The officer in *Ware* testified

that he was on motorcycle patrol when a woman flagged him down and told him

> that a man on a bicycle, whom she described, was selling cocaine out of a black purse. When the officer asked the woman how she knew the man was selling drugs, she replied, "He's out there every day selling drugs." The woman did not identify herself, and the officer never saw her again and never found out who she was.

672 A.2d at 559 n. 1. We sustained the ensuing *Terry* stop and subsequent arrest of the defendant, who matched the description given by the woman, as well as the seizure of drugs from a container he was carrying.

was corroborated almost immediately when the officers saw the red "construction-type" truck at the exact location stated by the citizen. Thus here, as in *Lawson,* "[r]eliability was established when the police just minutes later reached the [location] and found that the scene corroborated the informant's report in all respects." 360 A.2d at 40. Significantly, there were no other vehicles in the vicinity matching his description, nor was there anyone else nearby other than appellant and his companion. Furthermore, only a brief time (ninety seconds) elapsed between the officers' receipt of the information and their sighting of appellant twenty feet from the truck. These circumstances, coupled with appellant's admission to Officer Wise (still seated in his police car) that he had recently been in the truck, satisfy us that the officer had more than sufficient information to conduct an investigatory stop. *See United States v. Walker,* 294 A.2d 376, 378 (D.C.1972) ("When the officers went to [the location given by the citizen] and saw a man dressed as described by the citizen, they had a right to make an investigatory stop"); *see also Davis,* 759 A.2d at 675 (distinguishing *Florida v. J.L.*).

### B. *Probable cause*

■ Once appellant was stopped and detained, a search occurred almost immediately thereafter when Officer Wise ordered him to "retrieve" the cocaine from his pocket.[7] Appellant argues that probable cause could not depend on the "mere admission by the appellant that he was in the vehicle or that he owned that vehicle similar to the one reported by the citizen." This argument overlooks the crucial fact that the search was based not on appellant's admission that he had been in the truck, but on his admission that he had

"one little bag." At that instant the officer had probable cause to arrest appellant for possession a controlled substance and to conduct a search incident to that arrest. Because the totality of the circumstances at that point already included an eyewitness account of illegal drug use in the truck, appellant's proximity to the truck, and his admission that he had just been inside it, Officer Wise was "warranted in the belief that an offense [had] been ... committed." *Peterkin,* 281 A.2d at 568. Thus the search that led to the seizure of the bag of cocaine was lawful.

Appellant's conviction is therefore

*Affirmed.*

---

7. The government concedes that Officer Wise's directive was a search within the meaning of the Fourth Amendment.