UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Leslie Rakip,
      Claimant

      v.                                    Civil No. 11-cv-323-SM
                                            Opinion No. 2012 DNH 093

Michael J. Astrue, Commissioner,
Social Security Administration
      Defendant


                          **O R D E R**


     Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant,

Leslie Rakip, moves to reverse the Commissioner's decision

denying her applications for Social Security Disability Insurance

Benefits and Supplemental Security Income Benefits, under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1381-

1383c (the "Act").  The Commissioner objects and moves for an

order affirming his decision.


     For the reasons discussed below, claimant's motion is

denied, and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In 2007, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits, alleging that she had been unable to work since January 1, 1999. Her claims were denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). After reviewing all the record evidence, the ALJ issued a partially favorable ruling, concluding that claimant had been disabled since February 18, 2008. Claimant appealed to this court, seeking a determination that she was disabled approximately nine years earlier, on January 1, 1999. Subsequently, the Commissioner filed an assented-to motion to remand the matter to the ALJ for further evaluation of claimant's mental impairments, in accordance with the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a. The court (Laplante, C.J.) granted that motion. See Rakip v. Commissioner, No. 09-cv-380-JL. The Decision Review Board vacated the ALJ's (partially favorable) decision in its entirety and remanded the matter to the ALJ for further proceedings.

Accordingly, on November 30, 2010, the ALJ conducted another hearing. Claimant (accompanied by her attorney), an impartial vocational expert, and an impartial medical expert appeared and

testified.  Approximately two months later, the ALJ issued a decision denying claimant's applications for benefits.  Once again, claimant filed a timely appeal to this court, followed by a "Motion for Order Reversing Decision of the Commissioner" (document no. 10).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.   <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.   <u>"Substantial Evidence" and Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if

supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II. The Parties' Respective Burdens.

An individual seeking Social Security benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g) and 416.912(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or

other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.   Background - The ALJ's Findings.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that

claimant had not been engaged in substantial gainful employment since her alleged onset of disability: January 1, 1999.  Admin. Rec. at 9.  Next, he concluded that claimant suffers from the following severe impairments: depression and anxiety.  Id. at 10. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 10.  Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is limited from more than simple routine tasks requiring minimal public contact."  Id. at 12. And, relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 15. Consequently, the ALJ concluded that claimant was not "disabled," at any time relevant to his decision.

In support of her motion to reverse the decision of the ALJ, claimant advances three arguments: first, that the ALJ failed to give proper weight to the opinions of her treating mental health counselor; second, that the ALJ failed to properly assess her subjective complaints of disabling symptoms; and, finally, that the ALJ's residual functional capacity assessment was not supported by substantial evidence.

II.   The Treating Provider's Opinion.

With regard to her first argument in favor of reversing the ALJ's adverse disability determination, claimant says:

> It is [claimant's] contention that ALJ Klingebiel failed to fairly and properly weigh the opinion of the [claimant's] treating clinician.  His review of Ms. Leppanen Lerner's opinions failed to conform with the requirements of the Commissioner's Social Security Ruling (SSR) 06-3p and, as such, it cannot stand.

Claimant's memorandum (document no. 10-1) at 7.  The SSR on which claimant relies discusses the difference between "acceptable medical sources" and those health care providers who are not acceptable medical sources, and the weight to which their respective opinions are entitled.

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons.

8

> First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment.  Second, only "acceptable medical sources" can give us medical opinions.  Third, only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight.

SSR 06-3p, <u>Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims</u>, 2006 WL 2329939, at *2 (August 9, 2006) (citations omitted). While the SSR emphasizes that "information from these 'other sources' cannot establish the existence of a medically determinable impairment," it acknowledges that such sources "may provide insight into the severity of the impairment and how it affects the individual's ability to function."  <u>Id</u>.  It also discusses the factors an ALJ should consider when weighing any medical opinions, regardless of whether those opinions come from acceptable or non-acceptable sources, and regardless of whether they are treating, non-treating, or non-examining sources.  <u>Id</u>. at *2-4.

Here, the ALJ properly recognized that Ms. Leppanen Lerner is not an "acceptable medical source."  Admin. Rec. at 14.  Then, as required by the regulations and SSR 06-3p, he went on to explain why he afforded her opinions about the severity of

9

claimant's impairments only "limited weight."  In particular, the ALJ noted that Ms. Leppanen Lerner's opinions were not well supported by either her own clinical observations or by other substantial evidence in the record.  Id.

The ALJ's explanation is well-supported by the testimony of the medical expert, Dr. Koocher.[1]  Dr. Koocher testified about claimant's history of mental health treatment, and focused on her depressive disorder and her anxiety-related disorder.  Based upon his review of claimant's medical records, he concluded that:

> [W]hat we have is the overall picture [of] a young woman who did have significant problems as an adolescent, particularly around age 15.  But in the past 10 years, the record seems to consistently document moderate level rather than severe level of impairment, both in the narrative and in the detail that's provided in the records.

Admin. Rec. at 45.  He also explained why both Dr. Knight and Ms. Leppanen Lerner "appear to have misunderstood the social security criteria," resulting in what Dr. Koocher called "a little bit of

---

[1]    Dr. Gerald Koocher was retained by the Commissioner to review claimant's medical records, discuss her treatment history, and opine on her ability to function in the workplace.  He is, among other things, a Professor of Psychology and Dean of the School for Health Studies at Simmons College and, since 1981, he has been a Senior Associate in Psychology at Children's Hospital in Boston.  Admin. Rec. at 173-78.

incongruity," id. at 43 - that is, their use of medical terms which overstate (at least in social security context) claimant's impairments.  Ultimately, Dr. Koocher explained why the medical evidence of record supports the conclusion that claimant falls "within the moderate level of impairment."  Id. at 45.[2]

Having reviewed the administrative record, the court cannot conclude that the ALJ failed to comply with the requirements of SSR 06-3p.  He recognized that Ms. Leppanen Lerner is not an acceptable medical source, but acknowledged (and complied with) his obligation to provide an explanation for his decision to give her opinions only limited weight.  And, that decision is more than adequately supported by both claimant's record of medical treatment and the expert testimony of Dr. Koocher.

III. Claimant's Subjective Complaints of Disabling Symptoms.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical and/or mental limitations as well as her own description of those limitations.

---

[2]     Dr. Koocher also pointed out that claimant's medical records and treatment history were "slightly out of sync with the checkoffs that were filled out on the RFCs by the treaters. However, the RFCs don't provide documentation of anything more than moderate impairment."  Admin. Rec. at 45.

11

See Manso-Pizarro v. Secretary of Health & Human Services, 76
F.3d 15, 17 (1st Cir. 1996).  When the claimant has demonstrated
that she suffers from an impairment that could reasonably be
expected to produce the symptoms or side effects she alleges, the
ALJ must then evaluate the intensity, persistence, and limiting
effects of those symptoms to determine the extent to which they
limit her ability to do basic work activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated
> by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record.  This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..
>
> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

SSR 96-7p, Policy Interpretation Ruling Titles II and XVI:
Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements, 1996 WL 374186 (July

2, 1996).  Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms.  Id.  See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other sources who have examined her and/or reviewed her medical records, and to consider the other relevant factors identified by the regulations and applicable case law.  Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability" - factors which, given the nature of its review, this court lacks the ability to assess.  Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant's testimony about the disabling nature of her impairments was not entirely credible, the ALJ considered the inconsistencies between claimant's assertion (in February of 2008) that she was only working about one hour per week, her testimony at the administrative hearing that she was working approximately four hours per week, and her employment records, which showed that she was working roughly 8 to 20 hours per week during the calendar years 2008 through 2009. As the ALJ observed, such inconsistencies in claimant's testimony (and in forms submitted in connection with her applications for benefits) shed light on her overall credibility.

The ALJ also considered the fact that there was no evidence that claimant's employer found it necessary to provide her with any special accommodations or that the work she provided was worth anything less than what she was being paid. He also noted that claimant has provided "very significant care for her child," Admin. Rec. at 14, which included making frequent trips to Boston

14

for various assessments and applying for various grants to assist with his care.  See, e.g., Id. at 596.  See also Id. at 277 (claimant's Function Report, in which she describes her ability to perform household chores, do grocery shopping, and drive her son to school); Id. at 596-97 (statement by mental health counselor Victoria McDonald, observing that claimant's work in taking care of her son "seems to require far more effort than a 40 hour week at a job" and noting that claimant "was still unable to accept that her level of activity is far higher than she perceives").

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility. To be sure, there is substantial evidence in the record supportive of claimant's assertion that her depression and anxiety make life quite difficult for her.  Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that she remains capable of performing a range of work and, therefore, is not totally disabled.  In such circumstances - when substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision - this court is obligated to affirm the Commissioner's finding of no disability.  See Tsarelka, 842 F.2d

at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("We must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but we may not reverse merely because substantial evidence exists for the opposite decision.") (citation and internal punctuation omitted).

IV.    The ALJ's Residual Functional Capacity Assessment.

Finally, claimant asserts that the ALJ erred in concluding that she retains the functional capacity to perform a full range of work at all exertional levels, subject to two non-exertional limitations: that she is limited to performing no more than simple routine tasks and that her employment can involve only minimal contact with the public. See Admin. Rec. at 12-13. According to the claimant:

> [T]he ALJ's analysis of the evidence pursuant to the
> guidelines set forth in [SSR 96-8p] (and also 20 C.F.R.
> §§ 404.1545, 416.945) was flawed for reasons set forth
> in her legal argument presented above, i.e., the

16

> treating clinician's opinion regarding RFC was not
> properly weighed and the credibility assessment was
> flawed.  Because of these errors, the RFC assessment
> cannot be found valid.

Claimant's memorandum (document no. 10-1) at 24.  But, having

concluded that the ALJ's assessment of claimant's credibility and

his decision to discount the opinion of claimant's mental health

counselor, Ms. Leppanen Lerner, are well-supported in the record,

the court cannot conclude that he erred in determining claimant's

RFC.


### Conclusion

Having carefully reviewed the administrative record

(including the testimony of the claimant, the medical expert, and

the vocational expert), as well as the arguments advanced by both

the Commissioner and claimant, the court concludes that there is

substantial evidence in the record to support the ALJ's

determination that claimant was not disabled at any time prior to

the date of his decision.  His decision to discount the opinions

of claimant's mental health counselor, his assessment of

claimant's credibility, and his RFC determination are all

adequately supported by evidence in the record.

As is always the case in appeals of adverse benefits eligibility determinations, the court does not determine, de novo, whether claimant is disabled and entitled to benefits. This court's review is far more narrow: Is there substantial evidence in the record to support the ALJ's decision?  There is. Consequently, claimant's motion to reverse the decision of the Commissioner (document no. 10) is denied, and the Commissioner's motion to affirm his decision (document no. 11) is granted.

The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 23, 2012

cc:  Raymond J. Kelly, Esq.
     Gretchen L. Witt, AUSA